647 So.2d 630 (1994)
Reitha BOSWELL, Plaintiff-Appellee,
v.
KURTHWOOD MANOR NURSING HOME, Defendant-Appellant.
No. 94-703.
Court of Appeal of Louisiana, Third Circuit.
December 7, 1994.
Vernon Bruce Clark, Leesville, for Reitha Boswell.
James Dey Kirk, Alexandria, for Kurthwood Manor Nursing Home.
Before KNOLL and WOODARD, JJ., and BERTRAND[*], J. Pro Tem.
KNOLL, Judge.
Kurthwood Manor Nursing Home, the defendant in this worker's compensation case, appeals the judgment of the hearing officer finding that the claimant, Reitha Boswell, was an employee of the nursing home and entitled to temporary total disability benefits for a lower back injury she sustained while working in the nursing home. We reverse.

*631 FACTS
From October 1989 to August 1991, Reitha Boswell worked as a hairdresser at the Kurthwood Manor Nursing Home (hereafter Kurthwood) in Leesville. One or two days per week, Mrs. Boswell went to Kurthwood and used the nursing home's "beauty shop" facility to cut and style the hair of some of the residents. Mrs. Boswell was injured on August 7, 1991 while helping an elderly resident from the shampoo chair to the styling chair, and has not worked since the accident occurred.
Mrs. Boswell sought both worker's compensation benefits and damages in tort[1] for her injuries. As the basis for her worker's compensation claim, Mrs. Boswell maintains that she was either an employee of Kurthwood or a statutory employee under LSA-R.S. 23:1061. Kurthwood, on the other hand, contends that Mrs. Boswell was not its employee, and thus not entitled to worker's compensation benefits. After a trial on the merits, the hearing officer ruled that an employer/employee relationship existed between the parties, found Mrs. Boswell to be temporarily and totally disabled, and awarded benefits for disability and for rehabilitation services. Kurthwood appeals.

LAW
A prerequisite to any action in worker's compensation is the existence of an employer/employee relationship. Loomis v. Highland Hosp., Inc., 274 So.2d 200 (La.App. 2d Cir.1973). The burden of proof is upon the claimant to establish this requisite by a reasonable preponderance of the evidence. Id. The right to control is the essence of the employer/employee relationship, evidenced by four primary factors:
1. Selection and engagement;
2. Payment of wages;
3. Power of dismissal; and
4. Power of control.
Prince v. Baton Rouge Gen. Hosp., 449 So.2d 90 (La.App. 1st Cir.), writ denied, 450 So.2d 966 (La.1984); Vaughn v. Baton Rouge Gen. Hosp., 421 So.2d 288 (La.App. 1st Cir.1982), and cases cited therein. None of these factors alone is determinative of an employer/employee relationship; the totality of the circumstances must be considered.
Analysis of the four factors above clearly demonstrates that Mrs. Boswell did not meet her burden of proving that an employer/employee relationship existed between herself and Kurthwood.

1. Selection and engagement
Mrs. Boswell was working at the Trendsetter, a beauty salon in Vernon Parish, when a co-worker told her about the beauty shop at Kurthwood. Elaine Hitchman, who had in the past performed beautician services for some of the residents at Kurthwood, was moving out of state, and inquired if Mrs. Boswell would be interested in taking her place at the nursing home. Mrs. Boswell agreed.
Despite this agreement, however, use of the "beauty shop" facility was not restricted to one particular beautician. We find this fact significant. As an accommodation to its residents, Kurthwood made the beauty shop available to anyone who wished to use it. Each resident was free to have a family member or his own barber or beautician use the facility at Kurthwood. A resident could also go outside the nursing home to have his hair done. Kurthwood simply provided the luxury of an on-site beautician one or two days per week as a courtesy to its residents, particularly to those elderly or incapacitated residents who were physically unable to leave the nursing home. It is clear, however, that a resident would not have to go without hair care if he did not use the services of Mrs. Boswell or some other barber or beautician. The nursing home administrator testified that the staff washed each resident's hair when the resident was bathed. This testimony makes it apparent that the services available in the beauty shop were intended to be "luxury" in nature.
*632 The power of selection and engagement was with the individual residents who chose to use Mrs. Boswell's services, not with Kurthwood. What minimal contact Kurthwood had with Mrs. Boswell, or with any of the barbers or beauticians who used the nursing home beauty shop, was as an accommodation to the residents.

2. Payment of wages
On the days that Mrs. Boswell came to Kurthwood to work, she picked up a list of residents who had requested to have their hair done on that particular day. At the end of the day, she submitted the list to the bookkeeper. If the resident or his family had not paid Mrs. Boswell directly, the bookkeeper deducted the appropriate amount from the resident's account with the nursing home and issued Mrs. Boswell a check drawn on the "Patient's Fund Account."[2] No withholdings for social security or for state or federal taxes were made from these checks. Mrs. Boswell was not paid with checks drawn on the Kurthwood payroll account. She did not receive any medical or other employee benefits from Kurthwood. According to the nursing home administrator, Gail Sparks, Kurthwood kept no payroll or employment records on Mrs. Boswell, and Mrs. Boswell was not required to fill out an application for employment when she took Ms. Hitchman's place at the beauty shop.
Clearly, Kurthwood paid no wages to Mrs. Boswell. Whether directly or through the resident's account, Mrs. Boswell was paid by the individuals for whom she worked.

3. Power of dismissal
With regard to the third factor, we find instructive the analysis set forth in Vaughn v. Baton Rouge General Hospital, supra:
"Claimant asserts that Baton Rouge General Hospital had the power to fire her. This assertion is without substance. Baton Rouge General Hospital could have excluded claimant from working for Mrs. Brown at Baton Rouge General Guest House. However, Mrs. Brown was free to continue the claimant's employment at any other facility or at Mrs. Brown's personal residence without the approval or consent of Baton Rouge General Hospital. The power of dismissal was not Baton Rouge General Hospital's, but Mrs. Brown's."
421 So.2d at 290.
Similarly, in the case sub judice, Mrs. Boswell testified that she understood "if they [Kurthwood] weren't satisfied with my services they could tell me to leave at any time." However, nothing in the record substantiates Mrs. Boswell's "understanding." Kurthwood certainly had a right to exclude Mrs. Boswell from the physical premises of the nursing home. But even had it done so, any resident was free to seek out Mrs. Boswell's services at another location without securing the prior approval or consent of Kurthwood. The power of dismissal did not lie with Kurthwood, but with the individual residents for whom Mrs. Boswell worked.

4. Power of control
Our review of the record discloses no reservation or actual exercise of control by Kurthwood over Mrs. Boswell. Mrs. Boswell set her own work schedule, including the days and hours she worked. The prices charged to the residents for hair care services was strictly Mrs. Boswell's decision. Kurthwood required its staff members to wear a uniform; Mrs. Boswell chose her own attire.[3] With the exception of a large free-standing hair dryer, shampoo bowl, and chairs, Mrs. Boswell provided all of her own equipment and supplies. We find no basis upon which to conclude that Kurthwood retained any power of control over Mrs. Boswell's activities while she was at the nursing home.
*633 Based upon our analysis of the factors enumerated above, we find that Mrs. Boswell was not an employee of Kurthwood Manor Nursing Home. Mrs. Boswell simply did not prove her case by the requisite preponderance of the evidence.
Mrs. Boswell contends in brief that she is, at the very least, Kurthwood's statutory employee. We disagree. As set forth in LSA-R.S. 23:1061, an "employer" is liable in worker's compensation to those "employees" whose work is part of the employer's "trade, business, or occupation." Under the facts of this case, we do not find that the beautician services performed by Mrs. Boswell constituted part of Kurthwood's trade, business, or occupation. To meet its responsibility as a nursing home facility for the health and well-being of its residents, Kurthwood staff provided minimal hair care necessary for sanitary purposes. The beautician services for which Mrs. Boswell was made available were over and above this minimum, at the option of the resident, and paid for by the resident. Mrs. Boswell's services do not fall within the contemplation of the statutory employer doctrine, and we decline to hold that Mrs. Boswell was a statutory employee of Kurthwood.

CONCLUSION
Having found that Mrs. Boswell was not an employee, statutory or otherwise, of Kurthwood, we need not address the appellant's second assignment of error, which pertains to the finding of the hearing officer that Mrs. Boswell is entitled to temporary total disability benefits.
The judgment of the hearing officer is reversed and the claimant's worker's compensation demand against Kurthwood Manor Nursing Home is hereby dismissed with prejudice. Costs of trial and of this appeal are assessed to Reitha Boswell.
REVERSED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The record does not show the status of the tort claim against Kurthwood, filed in Vernon Parish district court on August 7, 1992.
[2] The "Patient's Fund Account" is a separate escrow account kept by Kurthwood for those residents who wished to have the nursing home administer their personal funds. The money in the account comes either from the patient himself or from his family.
[3] Mrs. Boswell makes much ado about the fact that she was told by Kurthwood staff that she had to wear long shorts in the summer. We find that this instruction is of no significance. Kurthwood had a right to expect that professionals working on its premises would be appropriately dressed.