745 So.2d 116 (1999)
Ellen Jo JORDAN, Plaintiff Appellant,
v.
CENTRAL MANAGEMENT COMPANY, d/b/a Autumn Leaves Nursing Home, DefendantAppellee.
No. 99-748.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1999.
Writ Denied January 14, 2000.
*117 Joseph Texada Dalrymple, Alexandria, for Ellen J. Jordan.
Samuel Newman Poole, Jr., for Central Mgmt. Co., d/b/a Autumn Leaves Nursing Home.
Before THIBODEAUX, PETERS, and GREMILLION, Judges.
PETERS, J.
The issue in this appeal is whether the workers' compensation judge erred in finding that Ellen Jo Jordan was not an employee of Central Management Company, d/b/a Autumn Leaves Nursing Home, when she injured her back on March 25, 1998. Ms. Jordan has appealed that decision, and, for the following reasons, we affirm the judgment in all respects.

DISCUSSION OF THE RECORD
Sometime in August or September of 1997, Ellen Jo Jordan began working as a licensed practical nurse (LPN) for Central Management Company, d/b/a Autumn Leaves Nursing Home (Autumn Leaves), at its Winnfield, Louisiana location. Her LPN duties included administering medications, changing dressings, feeding the nursing home residents, maintaining charts, and assisting the aides in their duties. Ms. Jordan normally worked a five-day-per-week, forty-hour shift and occasionally worked some overtime hours.
As a service to its residents, Autumn Leaves had an on-premises beauty and barber salon. When Ms. Jordan first began her LPN duties for Autumn Leaves, the salon was staffed by a beautician. At some point after Ms. Jordan's employment, the beautician discontinued her services with Autumn Leaves, and Ms. Jordan, who is also a licensed beautician, became aware of her departure. Ms. Jordan approached the nursing home's activity director and informed her that she would be willing to come in on one of her days off and provide beautician services *118 until the nursing home could find someone else.
Autumn Leaves accepted her offer, conditioned upon her performing beautician services at times other than when she was working in her capacity as an LPN. Ms. Jordan testified that she worked in the nursing home salon as a beautician on March 9, 17, and 25, 1998. In doing so, Ms. Jordan set her own prices and provided her own supplies. Autumn Leaves provided her with a list of residents who needed her services and paid her by check from its patient fund account or allowed her to obtain payment directly from the residents or family members of the residents.
Ms. Jordan testified that on March 25, 1998, while providing the beautician services, her back "popped" when she bent down to pick up towels and bedspreads that were on the floor to absorb water. She was diagnosed as having a herniated disc at L4-5, arthritis, and degenerative changes at L5-S1. She attempted to work on several occasions following the alleged incident but testified that she was unable to do the work.
On April 21, 1998, Ms. Jordan filed the instant claim seeking temporary total disability benefits, medical expenses, penalties, and attorney fees. After a hearing, the workers' compensation judge concluded that no employer-employee relationship existed between Autumn Leaves and Ms. Jordan regarding her beautician activities and that the beautician services did not create a statutory employment status.

OPINION

Employee Status as Being Within Course of LPN Employment
In her first assignment of error, Ms. Jordan contends that the workers' compensation judge erred in failing to find that, at the time of her injury, she was an LPN employee of Autumn Leaves rendering on-premises services beneficial to Autumn Leaves (even though on her off-duty time) and, as such, was within the course of her LPN employment. She bases this argument on the assertion that the provision of beautician services was an essential and integral part of Autumn Leaves' business and that she benefited her employer by volunteering to perform these services. In support of this argument, Ms. Jordan cites Maurice v. Orleans Parish School Board, 295 So.2d 184 (La.App. 4 Cir.1974); Lewis v. Bellow, 212 So.2d 540 (La.App. 3 Cir.1968); and Quinney v. Maryland Casualty Co., 347 So.2d 921 (La.App. 3 Cir. 1977), in which the claimants were allowed to recover workers' compensation benefits where they volunteered services outside of their regular job duties.
La.R.S. 23:1031(A) provides that workers' compensation benefits are due if an employee "receives personal injury by accident arising out of and in the course of his employment." (Emphasis added). An accident is considered to have occurred in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee. Mundy v. Department of Health & Human Resources, 593 So.2d 346 (La.1992). The principal criteria used in determining course of employment are time, place, and employment activity. Id. In 1 H. Alston Johnson, III, Workers' Compensation Law and Practice § 166, in 13 Louisiana Civil Law Treatise (3rd ed.1994), the author states:
Where the employer directs his employee to perform some service outside the regular line of his duties, the latter is acting within the scope of his employment while he is obeying such orders. Similarly, in most enterprises the work is so loosely organized that the employer accepts, and even encourages, interchange of assistance between employees, particularly in emergencies. Since the purpose of volunteering is to further the employer's business, the situation of the *119 volunteer is clearly distinguishable from that of the employee who leaves his post of duty either for his personal pleasure or for the purpose of helping an outsider.
(Footnote omitted.)
In Maurice, 295 So.2d 184, the claimant was employed by the defendant-school board as a substitute teacher. Although no after-school duties were required of her, she offered to help with a style show that was planned by a girls' club sanctioned and sponsored by one of the schools for which she was a substitute teacher. The claimant received no compensation for working after school hours. While working with the style show, she allegedly sustained injuries during a rehearsal after school hours when she was struck by a falling door in the school's auditorium. The fourth circuit found that the claimant was working within the trade, business, or occupation of the school board. This conclusion was based on the testimony of the school's principal to the effect that he allowed the claimant to participate in the style show only because her efforts would have been in aid of the duties of a regular staff member of his school in a school-sponsored activity. The fourth circuit noted that a regular, full-time teacher injured while performing extra work not connected with his usual duties, such as coaching a school athletic team, would be entitled to compensation, and it saw no difference between a regular, full-time teacher and a substitute teacher. Thus, the fourth circuit affirmed the award of workers' compensation benefits to the claimant.
In Lewis, 212 So.2d 540, the claimant, who was employed as a woodcutter by a pulpwood producer, was injured when he fell from a ladder while cutting a limb from a tree at the request of and on a tract of land owned by an individual who had granted the claimant's employer permission to traverse his land in connection with pulpwood-cutting operations being conducted on adjacent property. This circuit ruled in favor of the claimant, noting that the work performed was consistent with the claimant's employment and did not involve a substantial deviation from or a greater risk than his normal duties. This court explained that acts of voluntary deviation from regular duties to accommodate third persons or for other purposes have been held to be within the course and scope of employment if at least partially performed in the employer's interest. We also noted that had the employer been present at the time of the landowner's request, the employer would have acceded to it as a not-unreasonable minor favor in return for the favor of passage previously granted by the landowner.
In Quinney, 347 So.2d 921, the claimant, a plasterer for a subcontractor on a renovation and remodeling project, sustained injuries when he was struck by a vehicle which he had helped to extricate from a hole in a parking lot near his job site. In affirming an award of workers' compensation benefits, this court found that, although the employer was not involved in the parking-lot portion of the construction project, the claimant was acting as a part of the overall construction project which was responsible for the existence of the hole in the parking lot. We further stated that the claimant's action in aiding the driver of the vehicle that struck him was a temporary deviation from the course of his employment, that the temporary deviation was completed, and that the claimant had begun to return to his normal duties under the doctrine of reentry.
In the instant case, Ms. Jordan became aware of the need for beautician services and informed the nursing home's activity director that she could probably help out until the nursing home could find someone else. She testified that her motive in "volunteering" to undertake the job was to help the residents and to do a favor for the nursing home and that her prices were significantly lower than what they would have been in a salon outside of the nursing home. We find Maurice, Lewis, and Quinney similar to the instant case only in *120 that the claimants performed services outside of their usual duties and the services rendered provided some benefit to the employers.
However, in the instant case, unlike in Maurice, Lewis, and Quinney, the beautician services were not merely a minor deviation from, or an extension of, Ms. Jordan's LPN duties, nor were the services expected as an act of assistance within her LPN duties. In fact, Ms. Jordan was specifically restricted to performing the beautician services at times other than her regular LPN hours and was compensated separately. Further, there is no evidence that Autumn Leaves required or directed Ms. Jordan to perform the beautician services. Simply put, the beautician services were disconnected in time and nature from Ms. Jordan's regular LPN employment duties and constituted a separate service arrangement between Ms. Jordan and Autumn Leaves. Thus, the injuries sustained by Ms. Jordan are not compensable as being within the course of her regular employment as an LPN.

Employee Status as a Beautician
In her second assignment of error, Ms. Jordan contends that the workers' compensation judge erred in failing to find that she was an "employee" of the nursing home in her capacity as a beautician. A prerequisite to any workers' compensation action is the existence of an employer-employee relationship. Boswell v. Kurthwood Manor Nursing Home, 94-703 (La. App. 3 Cir. 12/7/94); 647 So.2d 630, writ denied, 95-0050 (La.3/17/95); 651 So.2d 267. The claimant bears the burden of proving the employer-employee relationship by a preponderance of the evidence. Id. The right to control is the essence of the employer-employee relationship, as evidenced by four factors: (1) selection and engagement, (2) payment of wages, (3) power of dismissal, and (4) power of control. Id. No single factor is determinative, but the totality of the circumstances must be considered. Id. Because Boswell is so factually similar to the case at hand, also involving a claimant injured while working as a hairdresser at a nursing home, we will use it as a standard for comparison for the instant case. In Boswell, this court analyzed the above-mentioned factors and concluded that the claimant-beautician was not an employee of the defendant-nursing home.

1. Selection and Engagement
In Boswell, a beautician who had performed beautician services for some of the defendant-nursing home's residents asked the claimant if she would be interested in taking her place at the nursing home, and the claimant agreed to do so. Despite this agreement, the use of the beauty salon was not restricted to one particular beautician or barber. In that case, this court found that the power of selection and engagement of a particular beautician or barber was with the individual residents, and not with the nursing home. The nursing home simply provided the luxury of an on-site beautician as a courtesy to its residents. In fact, a resident would not have been without hair care even if he or she chose not to use the available services because the nursing home staff washed each resident's hair on a regular basis. Additionally, a resident was free to seek barber or beautician care outside the nursing home if he or she chose to do so. This court explained that the minimal contact the nursing home had with the claimant or any of the barbers or beauticians who used the salon was as an accommodation to the residents.
In the instant case, Jimmy Dale Zimmerman, the administrator of Autumn Leaves, testified that while a vast majority of the residents used the on-premises services, the residents were free to have another beautician or barber come in and use the salon. Additionally, there is no evidence in the record that a resident would have had to go without hair care if he or she did not use the services of a beautician or barber in the salon. As in Boswell, the power of selection and engagement was *121 with the individual residents, not with Autumn Leaves. Although Mr. Zimmerman agreed that the beautician services are essential services for residents who liked to maintain their dignity, the services are no less a luxury than those in Boswell, and Autumn Leaves' contact with the beauticians who used the nursing home was as an accommodation to the residents.

2. Payment of Wages
In Boswell, the claimant was provided with a list of residents who had requested to have their hair done. At the end of the day, she submitted the list to the nursing home's bookkeeper, and if she had not been paid directly by the resident or his or her family, the bookkeeper issued her a check drawn on the patient fund account, a separate escrow account kept by the nursing home for those residents who wished to have the nursing home administer their personal funds. Additionally, no taxes were withheld, no employee benefits were given, no payroll or employment records were kept, and no application for employment was required of the claimant.
In the instant case, Ms. Jordan did not fill out any of Autumn Leaves' customary employment forms in association with her beautician activities; she set the prices she charged for the beautician services; she did not solicit business, but the nursing home provided her a list of residents who needed her services; and she was paid in the same manner as the claimant in Boswell. As in Boswell, clearly, Ms. Jordan was not paid wages for her beautician services by the nursing home but was paid either directly or through the patient fund account.

3. Power of Dismissal
In Boswell, this court explained that the nursing home certainly had the right to exclude the claimant from the physical premises of the nursing home but that even had it done so, any resident was free to seek out the claimant's services at another location without securing the prior approval or consent of the nursing home. Thus, the power of dismissal did not lie with the nursing home but with the individual residents for whom the claimant worked.
Likewise, under the facts of this case, the power of dismissal did not lie with Autumn Leaves but with the individual residents for whom Ms. Jordan worked. Specifically, as we appreciate Mr. Zimmerman's testimony, Autumn Leaves would replace a beautician if he or she were not providing services but would allow the replaced beautician to return to the nursing home and use the salon facilities if a resident requested that beautician. Furthermore, any resident was free to seek out the services of Ms. Jordan at another location without the consent of Autumn Leaves.

4. Power of Control
In Boswell, this court found no reservation or actual exercise of control by the nursing home over the claimant. As in Boswell, our review of the record discloses no reservation or actual exercise of control by Autumn Leaves over Ms. Jordan in connection with the beautician services. She set her own prices, provided her own supplies, and set her own schedule subject to the limitation that she provide beautician services at times other than when she was working for the nursing home in her capacity as an LPN. Additionally, Autumn Leaves did not supervise Ms. Jordan's activities in this regard or provide her with any type of a job description.
We note this court's recent decision in Hillman v. Comm-Care, Inc., 98-1341 (La.App. 3 Cir. 5/19/99); 732 So.2d 841, which also involved a beautician-claimant who allegedly sustained injury while providing beautician services for residents at a nursing home. In that case, we reversed a summary judgment in favor of the defendant, finding that the workers' compensation judge erred in making a legal determination that no employer-employee relationship existed. Specifically, while we found that the Hillman case was factually similar to Boswell, we found it to be distinguishable in that in Hillman, the claimant was required to interview for the position with the nursing home, the nursing *122 home controlled the days and hours the claimant worked, the claimant was not given a key to the beauty shop, and the nursing home controlled the amount the claimant was allowed to charge the patients to whom she provided the services. In the instant case, the evidence does not show that Ms. Jordan went through an interview process but merely that Mr. Zimmerman discussed with her the terms of her coming in on her day off to provide the services and that she would have to provide the services in a professional manner. Additionally, although Ms. Jordan was limited to providing beautician services at times other than when she was working for the nursing home in her capacity as an LPN, she set her own schedule, and the record does not reveal that Autumn Leaves' limitation in this regard was due to anything other than its desire to ensure that she fulfill her LPN duties. Also, Ms. Jordan set her own prices. Thus, we find the instant case distinguishable from Hillman, a summary judgment case.
Based on the foregoing analysis, we find no manifest error in the workers' compensation judge's finding that Ms. Jordan was not an employee of Autumn Leaves in her capacity as a beautician.

Statutory Employee Status
In her final assignment of error, Ms. Jordan contends that the workers' compensation judge erred in failing to find that she was a statutory employee of Autumn Leaves. La.R.S. 23:1061(A)(1) provides in part:
[W]hen any "principal" ... undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work ... any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him.... For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
This statute was amended by Acts 1997, No. 315, § 1, effective June 17, 1997, according to § 2 of that Act, to legislatively overrule the statutory employer tests as set forth in the Louisiana Supreme Court's decisions in Berry v. Holston Well Service, Inc., 488 So.2d 934 (La.1986), and Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96); 681 So.2d 329.
The instant case falls within the amendment to the statute. Thus, the beautician services must be an integral part of or essential to the ability of Autumn Leaves to generate its nursing home services. As set forth above, the beautician services were a luxury, an extra, provided to accommodate nursing home residents. The services were an added benefit but were not an integral part of or essential to the ability of Autumn Leaves to generate its nursing home services.[1] Thus, we find no manifest error in the workers' compensation judge's finding that Ms. Jordan was not a statutory employee of Autumn Leaves.

DISPOSITION
For the foregoing reasons, we affirm the judgment below and assess costs of this appeal to Ellen Jo Jordan.
AFFIRMED.
NOTES
[1] We note that in Boswell, 647 So.2d 630, the facts of which occurred prior to the most recent amendment to La.R.S. 23:1061, this court held that the claimant's services did not fall within the contemplation of the statutory employer doctrine.