|,YELVERTON, J.
This is the second time that this case has been before us involving the issue of whether Donna Hillman, a beautician at Comm-Care Inc., Community Care Center of Leesville (the nursing home), was an employee and therefore covered for workers’ compensation benefits. On August 6, 1996, she injured her back while lifting a patient from a wheelchair to the shampoo chair in the nursing home’s beauty salon. She was temporarily, totally disabled for several months. Her injury and the amount of benefits are not disputed.
Ms. Hillman filed a workers’ compensation claim against the nursing home on August 4, 1997. The nursing home denied that there was an employer/employee relationship. Its position then was based primarily upon an earlier decision of this court in Boswell v. Kurthwood Manor *1149 Nursing Home, 94-703 (La.App. 3 Cir. 12/7/94); 647 So.2d 630, writ denied, 95-0050 (La.3/17/95); 651 So.2d 267. Ms. Boswell was a hair dresser for Kurthwood Manor Nursing Home when she was injured in 1991. Kurthwood was the predecessor of Comm-Care, Inc., which occupies the same facility. We found Ms. Boswell was not an employee.
Relying on Boswell, the successor nursing home filed a motion for summary judgment asserting that Ms. Hillman was not an employee and therefore not entitled to workers’ compensation benefits. The Office of Workers’ Compensation granted summary judgment in favor of the nursing home finding that Ms. Hillman was not an employee of the facility when she was injured in 1996. Ms. Hillman appealed, and in Hillman v. Comm-Care, Inc., 98-1341 (La.App. 3 Cir. 5/19/99); 732 So.2d 841, this court reviewed the summary judgment evidence de novo. Discussing the summary judgment evidence and finding the case to be “clearly distinguishable from Boswell,” 732 So.2d at 845, the five-judge panel reversed. This court held that the trial 1 ¡¡.judge erred in making a legal determination that no employer/employee relationship existed. On remand and after a trial, a different trial judge found that Ms. Hillman was an employee of the nursing home entitling her to workers’ compensation benefits and awarded her $10,000 in attorney’s fees.
The appeal of that ruling is now before us. The nursing home assigns two errors: (1) the finding that Ms. Hillman was an employee, and (2) the award of attorney’s fees and legal interest.
On remand at the trial on the merits, Ms. Hillman put on the evidence that she had introduced at the summary judgment hearing, together with additional evidence. She testified that she interviewed with Mr. William Lang, the administrator, for the position. Ms. Gaynell Ford, the activities coordinator for the nursing home, corroborated this, saying she had introduced Ms. Hillman to Mr. Lang. Ms. Ford also testified that Mr. Lang dismissed Ms. Hillman’s predecessor after a short and unsatisfactory tenure. Mr. Lang could not recall the -lady he had dismissed, but he did not dispute Ms. Ford.
Ms. Hillman testified, and her testimony was supported by that of Gloria York, another cosmetologist who worked at the nursing home after Ms. Hillman. Ms. Hillman testified that at the initial interview, Mr. Lang had told her there was a price list on the mirror of the beauty shop, stating what she could charge and there was another list posted stating what “we could do and what we couldn’t do.” Both lists were put in evidence. The second list, with the heading “Beauty & Barber Shop Rules,” listed 13 rules. Those rules gave detailed instructions for Ms. Hillman to follow concerning maintenance of the shop and equipment, sweeping the floors, and the care and sanitation of counters, mirrors, sinks, chairs, combs, brushes, clippers, | ¡¡scissors, and razors. One of the rules required that she notify the nursing department of any infection, abrasion, or infestation observed on a resident.
There was further testimony that when Ms. Hillman arrived for work at 8:00 a.m. on Mondays and Wednesdays, working days, and the door to the beauty shop was unlocked for her, there was a list on the door put there by the nurses that told her what residents would be coming in and what she was supposed to do for them. The list included the “perms,” the people in the Alzheimers ward, those in the skilled care unit, and the paraplegics— those she would have to go and take care of in their rooms. In those situations, the nurses would go with her and stay with her until she was done. If the resident *1150 was “not competent” the nurses would tell her how to cut the resident’s hair.
She was not allowed to accept tips. She was on call for emergencies and was expected to be there when called for funerals or weddings. Nobody else performed beautician’s services besides her while she was there. She was required to complete the list on her door before she could leave. Often she worked through the lunch hour to accomplish this.
At the hearing on the motion for summary judgment, the evidence for the nursing home came in by way of affidavits executed by nursing home personnel, and Ms. Hillman’s deposition. At the trial on the merits, the testimony for the nursing home came in through Sheila Stomps, a nursing home employee, Mr. Lang, and the cross-examination of Ms. Hillman. Ms. Stomps testified that the nursing home did not pay Ms. Hillman, she was not on the payroll, no social security was withheld, no income taxes were withheld, and no insurance or medical benefits were paid to her.
Our careful examination of the record reveals that no additional evidence was offered by the nursing home at the trial on the merits beyond what had been submitted | ¿with the motion for summary judgment. The nursing home relied at the trial on the merits on the same substantive evidence it had presented at the hearing on the motion for summary judgment. At oral argument the nursing home candidly agreed that that was so. The evidence introduced at the trial on the merits added nothing substantial beyond its offerings on the motion for summary judgment.
After considering this evidence, and guided by our remand opinion, the trial court, finding in favor of Ms. Hillman, gave the following reasons for judgment:
Now, based upon my review of the evidence as well as the testimony that’s been presented here today, considering the first issue of selection and engagement, there’s really no question that whether through an agent or directly Ms. Hillman was sought out by the nursing home to provide cosmetology services for the nursing home, which I believe was formally known as the Kurthwood Manor Nursing Home, it was bought out by a separate outfit and now is known as Community Care Center. So in the Boswell case as well as the case we have here today, the same nursing home in Leesville is at issue. Boswell is very factually similar to this case, the Hillman case, in that the nursing home had apparently engaged the services of a licensed beautician to take care of the residents’ needs with regard to washing, cutting, setting, perming, and other services. Ms. Hillman performed those exact services. With regard to the payment of wages, there was no withholding or other specific employment type activity with regard to the payment of Ms. Hillman, however Ms. Hillman’s price schedule was controlled by the nursing home, her hours were controlled by the nursing home, in that she had to be at the nursing home facility for eight o’clock a.m. and she would work until the residents were completed. She testified and other employees testified that at eight o’clock a.m. there would be a line of nursing home residents waiting for the various services to be performed, and Ms. Hillman testified that she would not be able to at some point stop her day, but she simply worked through until she finished, in some cases having to come back to the facility to complete nursing home residents and in other cases going to the nursing home residents’ rooms to provide the services when they were not able to — they were not able to come to *1151 the facility. The facility itself I think is determinative of the-both the control as well as the — I can’t say wages, but certainly the facility, the beauty salon itself falls under the power of control in that most of the services that were performed were performed in the beauty salon. Ms. Hillman testified she did not have a key to the salon, but that she was there on the appointed day, Mondays or Wednesdays, at eight o’clock a.m., and when she would leave she would notify the nursing home personnel who would in fact come in and lock the facility. As part of the record, there was various documents, including the price list, which was posted on the mirror in the salon by the nursing home. Also [sin P-5 and six with regard to the Medicare and Medicaid agreements, it was identified that the nursing home would provide personal services to the residents, certainly personal services whether they considered luxury or otherwise, could be considered the beautician services that she performed. Also there were contained in P-7 the beauty and barber shop rules, which required certain conduct of Ms. Hillman including the hygiene of various combs, scissors, other aspects of her job, as well as the, I think the term was germicide, to prevent the spread of disease, and also she testified that if she found any type of scalp disease or legions [sic] she was to immediately report this to the nursing home personnel and that they would give her various medications to apply to those things. Again, all going towards the nursing home’s control of what Ms. Hill-man did for the residents. It was testified that the pnce list was not negotia-bl , Ms. Hillman couldn’t charge what she wanted to charge, but she was restricted by the price list, which had been provided by the nursing home. Additionally in P-9 there was the advertisement, I’m assuming it was the yellow page advertisement for the nursing home which provided that the beauty and barber shop would be available to residents, and it was also testified by Ms. Ford that during the interim periods when there was not a licensed beautician or cosmetologist on site that the residents got upset and that the nursing home worked quickly to provide a licensed cosmetologist.
It’s clear that the nursing home set the hours, controlled eighty percent or more of the funds received by Ms. Hill-man through the patients’ fund, and could dismiss her at will as they did Ms. Robinson, or Ms. Robertson, as it was testified. Certainly that element of control is satisfied under the Boswell four factors. No question about the power of dismissal and the power of control was clearly in my mind sustained and maintained by the nursing home.
The Ms. Robinson or Robertson referred to by the trial judge was the previous beautician before Ms. Hillman. We have earlier mentioned the testimony that this cosmetologist was dismissed.
We find no manifest error in the workers’ compensation judge’s finding that an employer/employee relationship existed between Ms. Hillman and the nursing home. The distinguishing facts between this and the Boswell decision, which we found to exist from an examination of the summary judgment evidence, are even more pronounced in the light of the additional evidence produced by Ms. Hillman at the trial on the merits. We affirm the trial judge’s decision that she was an employee.
lfiWe turn now to the second assignment of error. Defendants maintain that the trial court was clearly wrong in awarding an attorney’s fee arguing that *1152 the claim was reasonably controverted. The trial court stated in its reasons for judgment that whether an employee fits the four factors contained in Boswell was an unsettled area of the law and declined to award any penalties. However, it awarded $10,000 in attorney’s fees pursuant to Louisiana Revised Statute Article 23:1201 which states in part the following:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault....
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
The trial court made no specific finding that the claim was not reasonably controverted. In Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97); 704 So.2d 1161, the court held that the statute was inapplicable if the claim was reasonably controverted. “The award of attorney fees is a type of penalty in workers’ compensation matters.” Ward v. Phoenix Operating Co., 31,656, p. 7 (La.App. 2 Cir. 2/24/99); 729 So.2d 109, 113.
We find that this claim was not reasonably controverted. Although the trial judge was not entirely correct in his reasons for awarding attorney’s fees, we agree with the result and hold that attorney’s fees were properly awarded.
In Brown v. Texas-La Cartage, Inc., 98-1063 (La.12/1/98); 721 So.2d 885, the supreme court discussed the award of attorney’s fees and penalties pursuant to Louisiana Revised Statute 23:1201. The court noted that “[Unreasonably controverting a claim, which is the exception at issue in this case, requires action of a less egregious nature than that required for arbitrary and capricious behavior.” Id. at 890. The court explained “in order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base his denial of benefits.” Id. at 890. “[T]o determine whether the claimant’s right has been reasonably controverted, ... a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.” Id. at 890. Furthermore, “[i]f an employer or insurer reasonably controverts a claim and then becomes aware of information that makes his contr-oversion of that claim unreasonable, he must then pay the benefits owed or be subject to penalties and attorney fees from that point forward.” Id. at 890-91.
An employer or insurer will not be subject to penalties and attorney’s fees based on a belief that a ease which was distinguishable controlled the outcome. Seal, 704 So.2d 1161. The nursing home in the present case relied on Boswell, 647 So.2d 630, and continues to do so today. However, in the previous appeal in the present case, this court found that there *1153 were facts that clearly distinguished the worker found to be the independent contractor worker in Boswell, from the situation of the present claimant, Ms. Hillman. Our opinion twice stated that the facts were clearly distinguishable. Our ruling was that Boswell was not controlling if the facts were those revealed in the summary judgment setting. The nursing home was not justified |sin continuing to rely on Bos-ivell. Instead, it was required to thenceforth be guided by our decision in Hill-man, 732 So.2d 841, remanding the matter. We quote our language from pp. 844-5:
We find the instant case, while factually similar, is clearly distinguishable from Boswell. In the present case, Ms. Hillman was required to interview for the position with the nursing home. The nursing home controlled the days and the hours she worked. She was not given a key to the beauty-shop it was in the control of the nursing home. Although she was not paid directly by the nursing home, the home controlled the amount she was allowed to charge the patients to whom she provided a service.
These facts clearly distinguish this matter from the facts in Boswell. We determine that, considering the factors set forth in Boswell, the workers’ compensation judge erred in making a legal determination that no employer-employee relationship existed.
■
On remand, the nursing home did not introduce any additional evidence. Therefore, it had no additional factual information to reasonably controvert that Hillman was an employee. Having no additional evidence, common sense dictated that it should have considered itself to be under an obligation to pay benefits once the judgment of this court became final. This subjected the nursing home to attorney’s fees from that point forward.
Although the workers’ compensation judge’s reasons for awarding attorney’s fees were incorrect, he nevertheless reached the proper result in awarding attorney’s fees. Bergeron v. Watkins, 98-0717 (La.App. 1 Cir. 3/2/99); 731 So.2d 399. The award is affirmed because appellate review lies only from the workers’ compensation judge’s judgment and not his reasons. Id. We affirm the imposition of attorney’s fees.
Ms. Hillman neither appealed nor answered the appeal. We will not award penalties. Perot v. Link Staffing Services, 99-229 (La.App. 3 Cir. 6/23/99); 744 So.2d 80, writ not considered, 99-2247 (La.11/5/99); 751 So.2d 230.
For these reasons, the judgment is affirmed at appellant’s costs.
AFFIRMED.
DECUIR, J., dissents and assigns written reasons.
AMY, J., dissents for the reasons assigned by Judge DECUIR.