897 So.2d 117 (2004)
CHAILLAND BUSINESS CONSULTANTS
v.
Larry J. DUPLANTIS, Jr.
Larry J. Duplantis, Jr.
v.
Chailland Business Consultants.
Nos. 2003 CA 2508, 2003 CA 2509.
Court of Appeal of Louisiana, First Circuit.
October 29, 2004.
Writ Denied February 4, 2005.
*119 Nathan L. Schrantz, New Orleans, Counsel for Plaintiff/Appellant Chailland Business Consultants.
Carolyn A. McNabb, Houma, Counsel for Defendant/Appellee Larry J. Duplantis, Jr.
Martin E. Golden, Baton Rouge, Counsel for Intervenor Principal Life Insurance Company.
Before: WHIPPLE, FITZSIMMONS and DOWNING, JJ.
*120 DOWNING, J.
This workers' compensation appeal involves whether the policy in question afforded coverage under these distinct circumstances. Here, Larry J. Duplantis Jr.'s, company, LDJ Enterprises, was newly formed, and the exact date for coverage to begin was not specified in the agreement. Duplantis sustained a devastating head injury before drawing his first paycheck but after starting work for the new company. Chailland Business Consultants contracted to provide LDJ's workers' compensation coverage. Chailland claimed the policy had not gone into effect, and that Duplantis, as owner rather than an employee, was not covered. The WCC entered judgment, awarding benefits to Duplantis, and ordering Chailland to reimburse Duplantis's health insurance carrier that had paid for his treatment.
Chailland appealed the judgment rendered against it, alleging that the court erred in the following:
1. In denying Chailland's motion for involuntary dismissal based on prescription;
2. In finding that at the time Duplantis was injured that workers' compensation coverage was in effect pursuant to the employment administration agreement;
3. By concluding Duplantis was covered by Chailland's workers' compensation policy without finding an employer/employee relationship between Duplantis and Chailland;
4. In awarding compensation benefits to Duplantis when he had earned no wages, was an owner of the business, still owns the business and looks to the profits of the business for income rather than wages, and is in no way disabled from receiving said profits;
5. In allowing the health insurance carrier to intervene and then awarding reimbursement on the intervention even though the obligation had been extinguished under LSA-R.S. 23:1212 and the provisions for reimbursement under LSA-R.S. 23:1205(B) did not apply.
In workers' compensation suits the appellate court's review of factual findings is governed by the manifest error standard. Freeman v. Poulan/Weed Eater, 93-1530, p. 4 (La.1/14/94), 630 So.2d 733, 737. A factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
After a careful review we conclude that the record supports the WCC's determination that Duplantis was covered by the Chailland policy at the time of injury and that he is entitled to receive benefits under the policy. We also conclude that the WCC did not err in allowing Duplantis's group health insurance carrier to intervene and to be reimbursed for the medical expenses it incurred.
Since we have been favored by the learned judge's concise and considered written reasons for judgment, we incorporate and adopt the written reasons,[1] in pertinent part, as follows:
STATEMENT OF THE CLAIM
The issues presented to this Court at trial for consideration were: 1) whether or not the defendant's, Chailland Business Cons., Motion for [Inv]oluntary Dismissal should be granted; 2) whether or not the claimant, Larry J. Duplantis, Jr., is entitled to workers' compensation *121 benefits as a result of being injured while in the course of and arising out of his employment with defendant, Chailland Business Cons.; 3) whether or not the claimant, Larry J. Duplantis, Jr., is entitled to past due workers' compensation weekly benefits; 4) whether or not the claimant, Larry J. Duplantis, Jr., is entitled to medical benefits; 5) whether or not the defendant, Chailland Business Cons., reasonably controverted this claim and/or acted arbitrarily and capriciously in claiming that agreement was not in effect on the date of the accident and in denying that the claimant, Larry J. Duplantis, Jr., was injured while in the course of and arising out of his employment with defendant; and 6) whether or not the claimant, Larry J. Duplantis, Jr., is entitled to penalties and attorney fees.

FINDINGS OF FACTS
1. Chailland contractually agreed to provide workers' compensation coverage and that coverage was effective the moment Duplantis and the crew began the work of LJD Enterprises.
2. The testimony of Keith Chaisson and Lola Deroche established the following: Ms. Deroche owned a sandblasting and painting business known as Pro-Coat which operated at the air base in Houma, Louisiana. Ms. Deroche agreed to sell Pro-Coat's equipment and lease the premises to Duplantis doing business as LJD Enterprises, LLC.....
3. In furtherance of that agreement to sell, on September 27, 2000, Duplantis executed an assignment of lease with Ms. Deroche as owner of the Pro-Coat premises. That same day, he signed an employment administration agreement on behalf of LJD Enterprises with Chailland Business Consultants wherein Chailland agreed to provide workers' compensation coverage for employees of LJD Enterprises. Ms. Deroche was a client of Chailland for the Pro-Coat business and it was she that introduced the concept to the claimant. At the end of the day on September 29, 2000, Duplantis left the employ of Preferred Industries in preparation for the start of his new business.
4. Payment for the Pro-Coat equipment was agreed upon and was to be financed in part with a bank loan. Testimony established that the loan closing had been re-scheduled several times. Duplantis and his crew were anxious to begin work because they had terminated their employment elsewhere.
5. Duplantis asked Ms. Deroche if it was okay to begin work on October 3, 2000. Ms. Deroche made three phone calls to verify that everything was in place for LJD Enterprises to begin work. She called Chailland, Robert Page, the insurance representative, and Craig Landry, the attorney handling the loan closing. She called Chailland to ask if all of Duplantis' paperwork was in order because LJD Enterprises intended to work the next day. She called Mr. Page to verify that Duplantis had liability insurance. She called Mr. Landry to assure that the closing was scheduled that day and that Duplantis could begin work with no impediments. 6. Duplantis and the LJD Enterprises crew began work on October 3, 2000, and at the end of the day, while Duplantis was attending the sand hopper being filled by truck driver Ronald Benoit, the hopper buckled and Duplantis fell and sustained traumatic brain injury.
7. Mr. Page confirmed Ms. Deroche's testimony about the phone call, and confirmed that liability coverage was in place for LJD Enterprises on October 3, 2000. Dan Martin, the agent for Chailland *122 Business Consultants who signed LJD Enterprises up as a client, confirmed that she called to inquire about LJD Enterprises paperwork, but denied that she advised him they would begin work the next day.
8. The Employment Administration Agreement was dated and in effect at the time of the injury. There is no language in the agreement making coverage contingent upon the submission of employee paperwork. Dan Martin testified that there was nothing formal in writing stating the requirements for submission of employee paperwork, but that he wrote on a piece of paper some notes about the employee packets and gave it to Duplantis. Ms. Deroche, Keith Chaisson and Dan Martin testified that employee paperwork was sometimes accepted by Chailland on the day payroll was made. Dan Martin confirmed this in his testimony. Ms. Deroche testified that she would call in pertinent information on new employees at the first payroll period and that she would deliver the actual paperwork to the agent when the agent delivered the payroll checks. The accident happened on a Tuesday. Both Dan Martin and Ms. Chaisson testified that the payroll period Duplantis had selected was a Wednesday. It is reasonable to believe that Duplantis would call in the employee information for payroll the next day and deliver the paperwork when payroll was received.
9. Another inconsistency in Dan Martin's testimony is that he said he did not give Duplantis any employee packets, yet Dina Chaisson, Duplantis' sister, testified that she helped him fill out his employee packet the night before the accident. Sean Bourg, a LJD Enterprises employee who worked a full shift with the crew on the date of the injury testified that his wife filled out his paperwork.
10. Another inconsistency is that Dan Martin testified that he did not know very much about the LJD Enterprises business because the information was not received and entered into the computer. But the Workers' Compensation Application for LJD Enterprises filled out by Dan Martin on September 28, 2000, four days before the injury, listed the number of employees, their class code, their classifications and their rate of pay. He further denied that he knew when Duplantis intended to start work and testified that he thought it would be in about three weeks. Witness testimony established that Duplantis had the intent to start work on October 2, 2000. It is not credible that two days earlier, when Duplantis signed the agreement with Dan Martin, that Duplantis did not tell Dan Martin his intent to start work the next week. 11. Chailland was not averse to backdating documents to secure a client. Ms. Deroche testified that when she signed up as a client with Chailland, they backdated her paperwork and her workers' compensation coverage for three weeks.
12. According to law and the evidence at trial, the claimant, Larry Duplantis, and his crew were covered by workers' compensation coverage the moment they stepped onto the premises and commenced work operations, notwithstanding any private agreement to the contrary with Chailland.
13. Chailland, upon learning of the accident, immediately took steps to cancel both LJD Enterprises contract and Ms. Deroche's contract to avoid responsibility for workers' compensation coverage. The risk manager for Chailland, Ann Morgan Mitchell, testified that at first *123 she thought the claimant was Ms. Deroche's employee. She also testified that Ms. Deroche insinuated in one conversation that Duplantis was hurt in her yard, but that in a subsequent conversation Ms. Deroche made it clear that the business was Duplantis' on that day. Ms. Deroche herself expressed that at the time she had doubts about the status of the sale of the company. But in order to be sure that they were not contractually obligated to either Duplantis or Ms. Deroche, they cancelled both contracts. To be sure it would be off the hook, Chailland refused to pay Ms. Deroche's final payroll for the company. This conduct, coupled with Chailland's attempt to avoid responsibility by first claiming that there was no contract, then claiming that there was a contract but that LJD Enterprises had no employees registered in the system, then attempting to allege fraud on the part of the family, all rise to the level of egregious conduct and bad faith.
14. Chailland raised the issue of prescription during the trial on the merits in argument. It lists the issue of prescription on its 1008. Chailland did not however, file an exception of prescription. [the WCC did not consider the prescription issue.]

CONCLUSIONS OF LAW
A prerequisite to any workers' compensation action is the existence of an employer-employee relationship. Jordan v. Central Management Co., 99-748 p. 7, (La.App. 3 Cir. 10/13/99) 745 So.2d 116, 120. A person rendering service for another in any trades, business or occupations covered by this chapter is presumed to be an employee. LSA-R.S. 23:1044. The claimant bears the burden of proving the employer-employee relationship by a preponderance of the evidence. The employer-employee relationship is evidenced by four factors: 1) selection and engagement, 2) payment of wages, 3) power of dismissal, and 4) power of control. No single factor is determinative, but the totality of the circumstances must be considered. The defendant argues that by virtue of its contract with LJD Enterprises, LLC, its employees would be the defendant's employees, and since the employees were not in the computer, they were not employees. That argument is without merit.
The defendant's agreement cannot abrogate the statutory provisions of workers' compensation law. LJD Enterprises, LLC had the power of selection and engagement. LJD Enterprises, LLC paid wages through the defendant. LJD Enterprises, LLC had the power of dismissal. It had the power of control. For purposes of workers' compensation law, there was an employment relationship between LJD Enterprises, LLC and the crew who was working on the date of the injury. The workers' compensation coverage is mandated by statute.
From the standpoint of the law on contract interpretation, a contract is the law between the parties, and is read for its plain meaning. Thus, where the words of a contract are clear and explicit and lead to no absurd consequences, the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence, such that, if a court finds the contract to be unambiguous, it may construe the intent from the face of the document  without considering extrinsic evidence and enter judgment as a matter of law. Further, a contract is ambiguous when it is uncertain as to the parties' intentions and susceptible to *124 more than one reasonable meaning under the circumstances and after applying established rules of construction. Put another way, when the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent, and this established rule of strict construction does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties.
This Court relies on the rule that doubts or ambiguities as to the meaning of a contract must if not otherwise resolvable, be eliminated by interpreting the contract against the party who prepared it.
The statutory provision La.C.C.P. art.2056 captioned "Standard-form contracts," provides that, "in case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text" and that "a contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party." This language suggests it will primarily be applied to standard-form or adhesionary contracts or, as the Supreme Court of Louisiana has most often recently applied this section to insurance contracts. Neither the Federal Fifth Circuit Court of Appeals nor the Supreme Court of Louisiana has, however, confined the provision to these types of contracts. Thus, the contract involved herein is a standard form contract and on its face provides for workers' compensation coverage without more on the part of the claimant. The contract does not provide for a deposit on the compensation premium. Based on that analysis, the compensation coverage takes effect at the time the contract is signed. A plain review of the Employment Administration Agreement mentions nothing about the submission of certain paperwork to activate the provisions of the agreement.
An exception of prescription presented only in argument either orally or in writing by way of memorandum or brief is not contemplated by the Code of Civil Procedure. Box v. City of Baton Rouge, 02-0198 p. 3, (La.App. 1 Cir. 1/15/03) 846 So.2d 13, 14. In that case, the employer asserted that the plaintiff's claim was prescribed and the defendant filed a suspensive appeal asserting that the workers' compensation judge erred in denying its exception of prescription. The appeal court noted that the defendant never filed an exception of prescription, it simply argued at trial that plaintiff was not entitled to relief because his claim for medical benefits had prescribed. It held that the issue was never properly before the workers' compensation court and should not have been ruled on.
Notwithstanding the claimant's failure to properly bring this matter before this Court, its argument of prescription is without merit and fails in light of the facts. First, ample proof was presented at trial that the defendant not only had notice of the injury, but investigated the accident thoroughly and filed a 1007, Employer Report of Injury, the day after the accident. Secondly, when the claimant was notified by the defendant that it was taking the position that no contract existed between them providing for workers' compensation, the claimant filed a declaratory judgment action in the 32nd Judicial District Court regarding the validity of the contract and that action interrupted prescription.
*125 When a petition notifies a defendant that legal demands are made for a particular occurrence, prescription is interrupted. Nini v. Sanford Brothers, Inc., 276 So.2d 262 (La.1973). The petition must state the material facts of the occurrence that is the subject matter of the litigation. Parker v. Southern American Ins. Co., 590 So.2d 55 (La.1991). In Smith v. Arcadian Corporation, 99-1039 p. 4, (La.App. 3rd Cir.12/8/99), 753 So.2d 880, 882, the court framed the issue of prescription as whether a petition filed in a federal class action suit was sufficient to put the employer on notice of its exposure to a workers' compensation claim thereby interrupt[ing] prescription. That court found that the petition was not sufficient because no allegations of physical injury were made.
In the instant case, the petition for declaratory judgment specifically makes reference not only to the injury, but to the fact that the claimant sought to make a claim for workers' compensation benefits which was denied when the defendant alleged there was no contract between the parties to provide for coverage. As soon as the defendant capitulated on the contract issue in the declaratory judgment action, timely 1008's were filed.
In order for a claimant to be entitled to recover workers' compensation benefits, he must prove, by a preponderance of the evidence, that a work-related accident occurred and then an injury was sustained. A claimant's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: 1) no other evidence discredits or casts serious doubt upon the worker's version of the incident, and 2) the worker's testimony is corroborated by the circumstances following the alleged incident. Williams v. Wal-Mart Stores, Inc., 00-1347 p. 4, (La.App. 1 Cir. 9/28/01) 809 So.2d 294, 298.
Here, because of the claimant's mental disability resulting from the injury, he was unable to testify, but the trial testimony and exhibits provide ample support not only for the proposition that the claimant defeated any argument for involuntary dismissal, but that this Court finds that an employment relationship existed, workers' compensation coverage was contractually provided for, and that the claimant sustained severe and permanent injury entitling him to indemnity and medical benefits.
Chailland listed as a defense to the claim that Duplantis failed to use an appropriate safety device while working on the hopper. [No evidence was produced] to support this theory at trial, nor was the argument made at trial. Furthermore, the testimony of truck driver, Ronald Benoit, who was present when the accident occurred, testified that he had never seen anyone in similar situations use a personal safety device or harness of any type. He also testified that the hopper had a safety ring at the top and pointed out the device in the photographs admitted into evidence at trial.
Duplantis alleged bad faith with regard to Chailland's handling of the claim. Pursuant to LSA-R.S. 23:1201(F), a workers' compensation claimant is entitled to penalties and attorney fees if an employer fails to timely pay compensation benefits unless the claim is reasonably controverted or such payment results from conditions over which the employer or insurer had no control. The test to determine whether the claimant's right to benefits has been reasonably controverted is set forth in Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906, (La.App. 1 Cir.1990).

*126 "Given the facts, medical and otherwise, known to the employer or his insurer, did the employer or his insurer have a reasonable basis to believe that medical expense and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case."
Therefore, this Court finds that the defendant's, Chailland Business Consultants, Motion for Involuntary Dismissal is hereby denied.
The Court also finds that the defendant, Chailland Business Consultants, was contractually obligated to provide workers' compensation coverage and that said coverage was in effect at the time of Duplantis' work-related accident. This Court also finds that the claimant, Larry J. Duplantis, Jr., was injured while in the course of and arising out of his employment with defendant, Chailland Business Consultants, and therefore, claimant is entitled to all applicable workers' compensation indemnity benefits and all reasonable and necessary medical benefits.
This Court also finds that the payment of medical expenses by the intervenor, Principal Life Insurance Company, extinguishes the claimant's claim for those expenses entitled to a medical offset pursuant to LSA-R.S. 23:1212.
The Court also finds that pursuant to LSA-R.S. 23:1205, the intervenor, Principal Life Insurance Company, is entitled to be reimbursed by defendant, Chailland Business Consultants, for medical expenses paid in the treatment of the catastrophic injuries sustained by Larry Duplantis, Jr., in the amount of $192,194.34.
As stated above, the WCC's decision regarding the motion for involuntary dismissal and Duplantis's entitlement to workers' compensation benefits are straightforward and supported by the record. Thus, assignments of error one, two, three, and four are without merit.
The fifth assignment of error, however, is problematic because there is a conflict between the provisions of LSA-R.S. 23:1212 and LSA-R.S. 23:1205(B). LSA-R.S. 23:1212 states that payment by any person or entity, other than the employee, a relative or friend, for medical expenses owed under this Chapter "shall extinguish the claim against the employer or insurer for those medical expenses." However, LSA-R.S. 23:1205(B) says that "[a]ny company which contracts for health care benefits for an employee shall have a right of reimbursement against the entity responsible for the payment of workers compensation benefits ... if the company paid health care benefits for which such entity is liable." Principal Life Insurance Company, the intervenor, squarely fits into both LSA-R.S. 23:1212 and LSA-R.S. 23:1205 when it paid health insurance claims for Duplantis.
The legislative history indicates that in 1989, LSA-R.S. 23:1212 was enacted to prevent the employee from receiving a windfall when his health insurance carrier and workers' compensation carrier paid the same medical expenses. This law became effective Jan. 1, 1990 and is commonly referred to as the "medical expense offset" provision. This created confusion because some employers delayed authorizing their workers' compensation carrier to pay their injured employee's medical expenses, thereby forcing the employee's personal health insurance care provider to foot the bill. To remedy this situation, in 1995, with H.B. 2326, the legislature amended LSA-R.S. 23:1205, granting a *127 right of reimbursement to the health care provider against the workers' compensation insurer. This became effective July 1, 1995 and was in effect at the time of Duplantis's injury.
Chailland argues that the language of LSA-R.S. 23:1205(B) only applies in cases where the employer has a right of subrogation against a third party.[2] Thus, LSA-R.S. 23:1205 would only apply if Duplantis, an employee of Preferred Sandblasting, had a potential recovery against some third party who was ultimately responsible for his injuries while in the course and scope of his employment.
We disagree with Chailland's argument. When a law is susceptible to more than one interpretation, the one affording a reasonable and practical effect to the entire act is to be preferred over the one that renders the other part ridiculous or nugatory. Breaux v. Lafourche Parish Council, 02-1422, p. 6 (La.App. 1 Cir. 8/25/03), 851 So.2d 1173, 1177. Merely because more than one act of the legislature proscribes particular conduct does not mean that the multiple provisions are irreconcilable. State v. Smith, 597 So.2d 1151, 1153 (La.App. 1 Cir.1992). Statutes specifically directed to the matter at issue must prevail as an exception to the statute more general in character in order to give effect to the legislative intent of the general rule. Id. In construing these statutes, all laws on the same subject matter should be construed together so as to produce a harmonious system. City of Shreveport v. Urban Land Co., 177 La. 357, 362, 148 So. 256, 258 (1933). The presumption is that a new law relating to such subject matter was enacted with reference to the former general law. Id. When possible, it is the duty of the court to adopt a construction of the provision that harmonizes and reconciles it with other provisions. Breaux, 02-1422 at p. 6, 851 So.2d at 1177.
Here the specific provisions of LSA-R.S. 23:1205(B) clearly state "any company" which contracts for health care benefits "shall" have a right to reimbursement. No language limits recovery to employers who provide the employee with both workers' compensation and health care benefits.[3] LSA-R.S. 23:1205 was enacted five years after LSA-R.S. 23:1212 was enacted. LSA-R.S. 23:1205(B) specifically addresses the health insurance carrier's right to reimbursement. Therefore, we conclude the legislature provided a specific exception under LSA-R.S. 23:1205(B) to the general rule under LSA-R.S. 23:1212. *128 Applying applicable statutory interpretation principles to harmonize these statutes, we conclude that Principal Life Insurance Company has a right to be reimbursed in accordance with the law. Thus, Chailland's fifth assignment of error is without merit. The judgment of the workers' compensation court is affirmed.

DECREE
For the above reasons, we affirm the judgment against Chailland Business Consultants. Costs of this appeal are assessed against Chailland Business Consultants.
AFFIRMED.
FITZSIMMONS, J., agrees and assigns additional reasons.
FITZSIMMONS, Judge, agreeing and assigning additional reasons.
I agree with the majority opinion and respectfully assign the following additional reasons. The claim extinguished by La. R.S. 23:1212 is that of the injured claimant. It is not the health care insurer's claim for reimbursement under La. R.S. 23:1205(B) for a claim owed by the workers' compensation insurer.
NOTES
[1] The actual party's names have been substituted for "claimant" and "defendant" therein for clarity.
[2] Chailland also argues that Principal Life Insurance Company had no standing to intervene in this case because its insured was the employee of Preferred Sandblasting and Preferred Sandblasting was not a party. Chailland did not file an exception of no right of action nor raise it as an affirmative defense in its answer; therefore, the exception has not been formerly raised. La.C.C.P. art. 928 B, Furthermore, prior to trial it was stipulated that Preferred Sandblasting through its carrier, Principal Life Insurance Company, paid $192,194.34 in medical expenses for Duplantis.
[3] In the 2004 legislative session LSA-R.S. 23:1205(C) was enacted to read "In the event that the workers' compensation payor had denied that the employee's injury is compensable under this Chapter, then any health insurer which contracts to provide health care benefits for an employee shall be responsible for the payment of all medical benefits pursuant to the terms of the health insurer's policy." LSA-R.S. 23:1205(C)(1). "If it is determined that the workers' compensation payor was responsible for payment of medical benefits that have been paid by the health insurer, the obligation of the workers' compensation payor for such benefits shall be to reimburse the health insurer one hundred percent of the benefits paid." LSA-R.S. 23:1205(C)(2). (Emphasis added). Although 23:1205(C) was enacted after this accident, this language clearly indicates that the health care insurer need not have any relationship with the employer at all to be reimbursed.