PARRO, J.
LThe plaintiff and the defendants have appealed the judgment of the workers’ compensation judge (WCJ), which failed to award the employee temporary total disability benefits (TTDs) or supplemental earnings benefits (SEBs), despite finding *736 that he was injured in an accident, which arose out of and was within the course and scope of his employment. For the reasons that follow, we affirm in part, reverse in part, and render in part.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Joshua Prine was hired by Coastal Bridge Company, L.L.C. (Coastal), as a carpenter on January 12, 2012. He was initially assigned to a job site in Slidell, but was eventually moved to a project building a span bridge in Lafayette at the beginning of February. Because Mr. Prine lived in Independence, Louisiana, the job in Lafayette required that he stay in a motel during the week. Mr. Prine testified that he would usually stay in the motel beginning on Sunday evenings and that he would work Monday through Friday. He would then drive home on Friday evenings. His roommate at the motel was the foreman on the Lafayette job, Pete Ara-nyosi.
According to Mr. Prine, he usually woke up around 5:00 or 5:30 a.m. so that he could have breakfast at the motel before reporting to the job site, which was near the motel, for 6:30 a.m. On the morning of February 28, 2012, he reported to the job site in accordance with this schedule, as usual, and began wrecking forms using a maul. While carrying out this task, Mr. Prine injured his back. Mr. Prine notified Mr. Aranyosi of his injury, and Mr. Ara-nyosi allowed him to íie down in the back of his truck for a while to see if that would alleviate the pain; however, when that failed to provide relief, Mr. Aranyosi took Mr. Prine for drug and alcohol testing as a preliminary step to providing medical treatment.
Before leaving the job site, Mr. Aranyosi consulted with Sue Dellafiora, a Coastal employee who handles insurance claims, concerning Mr. Prine’s accident. After he informed her of Mr. Prine’s accident, Ms. Dellafiora advised Mr. Aranyosi to take Mr. Prine to an occupational medical center (clinic) for drug and alcohol testing in |saccordance with Coastal’s drug testing policy.[1] Ms. Dellafiora’s e-mail memorializing this plan of action mentions only that Mr. Prine was to be taken to the clinic for drug and alcohol testing; no mention was made of taking Mr. Prine to seek medical treatment.
When they arrived at the clinic, the nurse took Mr. Prine into a room, handed him a cup, and requested that he provide her with a urine specimen.' According to Mr. Prine, he told her that he wanted to see a doctor, but the nurse informed him that he had to provide a specimen before he could see a doctor. In response, Mr. Prine again advised her that he wanted to see a doctor. The clinic’s receptionist then apparently notified Mr. Aranyosi that Mr. Prine had refused to provide a urine sample and submit to the drug test. Therefore, after speaking with his supervisors at Coastal, Mr. Aranyosi terminated Mr. Prine’s employment for refusing to submit to the drug test.[2] No medical treatment was provided to Mr. Prine. Mr. Aranyosi then drove Mr. Prine back to the motel where they had been staying so that Mr. *737 Prine could collect his automobile and belongings.
Mr. Prine attempted to drive himself back to his home in Independence; however, he testified that, after he had driven for a short distance, he was hurting and his feet were tingling. According to Mr. Prine, the situation escalated to the point that he could not feel his legs anymore. Therefore, he pulled over to the side of the road to call his mother and inform her about the accident. His parents then came to pick him up in Breaux Bridge and drove him to North Oaks Medical Center (North Oaks) in Hammond, Louisiana.[3] In addition to receiving emergency medical treatment at North Oaks, Mr. Prine submitted to a drug screen, which came, back negative.
On March 7, 2012, Mr. Prine filed his first disputed claim for compensation 14against Coastal, contending that no wage benefits had been paid and that no medical treatment had been authorized. In addition to seeking wage benefits and payment for his medical care, Mr. Prine sought penalties and attorney fees for Coastal’s failure to pay his claim timely.[4]
The defendants answered the claim, denying that there was an accident within the course and scope of the plaintiffs employment. In addition, the defendants contended that Mr. Prine had refused to submit to drug and alcohol testing immediately after the alleged accident, despite the existence of a written and promulgated drug policy; therefore, according to the defendants, Mr. Prine was presumed to have been intoxicated at the time of the alleged accident.
Thereafter, Mr. Prine filed a motion for partial summary judgment concerning the intoxication issue. In opposition to the motion for summary judgment, the defendants filed, in part, an affidavit from Mr. Aranyosi, in which he claimed that, after the alleged accident, Mr. Prine stated that he had smoked marijuana and that he wanted to go to a Ra Shop on the way to the clinic so that he could obtain a substance that would help cleanse his system of the marijuana. Mr. Aranyosi further contended that Mr. Prine began searching for Ra Shops on his cell phone as they were driving to the clinic. Based at least in part on this affidavit, the trial court denied Mr. Prine’s motion for partial summary judgment on the intoxication issue.
Mr. Prine then filed a third amended claim, contending that Mr. Aranyosi had willfully made false statements for the purpose of defeating a workers’ compensation benefit or payment in violation of LSA-R.S. 23:1208(B). Specifically, the third amended claim alleged that.Mr. Aranyosi’s contentions that Mr. Prine had smoked marijuana and had wanted to find a Ra Shop prior to being treated on the morning of the accident were false. Thus, Mr. Prine alleged that Coastal and Gray Insurance were liable in solido for the penalties provided by LSA-R.S. 23:1208(C). The defendants answered the third amended claim and filed a reconventional demand against Mr. Prine, alleging that he had committed workers’ compensation fraud pursuant to LSA-R.S. 23:1208(A), [5thus forfeiting his right to workers’ compensation benefits and subjecting himself to liability for civil penalties. According to the reconventional demand, Mr. Prine had falsely claimed that he was unable to per *738 form any physical labor; however, following the accident, video surveillance carried out at the request of the defendants demonstrated that he had performed some mechanical work on a vehicle.
After a trial on the matter, the WG determined that Mr. Prine was injured as the result of an accident that occurred in the course and scope of his employment, The WCJ further determined that Mr. Prine had carried his burden of proof in demonstrating that he was not intoxicated at the time of the accident; thus, the WG found that the defendants were responsible for Mr. Prine’s past medical treatment and expenses and for any reasonable and necessary future medical expenses. However, the WG did not order the defendants to pay any penalties, because it found that the defendants had reasonably controverted Mr. Prine’s claim. Furthermore, the WG determined that Mr. Prine was not entitled to TTD benefits, because he had failed to bear his burden of proof that he was unable to perform any type of work.[5] Finally, the WG denied all fraud claims pursuant to LSA-R.S. 23:1208. All parties have appealed.[6]
STANDARD OF REVIEW
In a workers’ compensation case, as in other cases, the appellate court’s review of factual findings is governed by the manifest error, or clearly wrong standard. Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129, 132; Kennedy v. Security Industrial Insurance Company, 623 So.2d 174, 175 (La.App. 1st Cir.), writ denied. 629 So.2d 389 (La.1993). The two-part test for the appellate review of facts is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record establishes that the finding is not manifestly erroneous. Mart v. Hill. 505 So.2d 1120, 1127 (La.1987). An appellate court may not set aside a trial court’s factual finding unless, after reviewing the record in its entirety, it determines the trial court’s finding was clearly wrong. Stobart v. State, through Dept. of Transportation and Development, 617 So.2d 880, 882 (La.1993). Furthermore, when factual findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demean- or and tone that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
DISCUSSION

Defendants’ Appeal

On appeal, the defendants contend that the WO erred in finding that Mr. Prine demonstrated by a preponderance of the evidence that an accident occurred, which arose out of and was within the course and scope of his employment. The defendants claim that Mr. Prine called no witnesses to corroborate his testimony that the accident occurred. In addition, the defendants contend that numerous inconsistencies in the record and testimony cast doubt on his version of events.
The Workers’ Compensation Act provides coverage to an employee for personal injury by accident arising out of and in the course of his employment. LSA-R.S. 23:1031(A). Initially, a workers’ com *739 pensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. Holiday v. Borden Chemical, 508 So.2d 1381, 1383 (La.1987); Borel v. Dynamic Offshore Contractors, 626 So.2d 565, 567 (La.App. 3rd Cir.1993), writ denied, 93-2993 (La.1/28/94), 630 So.2d 801. A worker’s testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker’s version of the incident; and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). Corroboration of the worker’s testimony may be provided by the testimony of co-workers, spouses, friends, or by medical evidence. Bruno, 593 So.2d at 361. Barring circumstances that cast suspicion on the reliability of the worker’s uncontra-dicted testimony, the WO should accept the testimony as true when |7determining whether the worker has discharged his burden. Brown v. Kwok Wong, 01-2525 (La.App. 1st Cir.12/20/02), 836 So.2d 315, 319.
Mr. Prine testified that he injured himself while swinging a maul as he was performing his job for Coastal. Mr. Prine testified that the maul twisted and ricocheted sideways and that he “heard something pop” in his back. Both Mr. Prine and Mr. Aranyosi testified that Mr. Prine notified Mr. Aranyosi that he had been injured while he was still on the job site and that Mr. Aranyosi took Mr. Prine to a clinic shortly thereafter.
Mr. Aranyosi completed an accident report regarding the injury, in which he noted that Mr. Prine had suffered a back sprain while “wrecking span all from under span.”[7] Mr. Aranyosi noted that there were no unsafe actions or other personal factors, such as an improper attitude or lack of knowledge or skills, by Mr. Prine or others that contributed to the accident. Mr. Aranyosi also notified Coastal’s employee, Ms. Dellafiora, about the accident. Nothing in Mr. Aranyosi’s statements to Ms. Dellafiora or his comments on the accident form indicate that he doubted Mr. Prine’s claims that he had been injured in an accident while working in the course and scope of his employment for Coastal. Indeed, Mr. Aranyosi testified at the trial of this matter that he did not have any reason to believe that Mr. Prine had not injured himself on the job on the date and time in question.
The evidence in the record further demonstrates that Mr. Prine was examined several hours after the accident at North Oaks. Specifically, his medical records from North Oaks indicate that Mr. Prine was examined at 2:42 p.m. on Tuesday, February 28, 2012, and that his complaint was noted as a back injury. The records further indicate that he had lower back pain, with pain going down his left leg, as well as pain between his shoulder blades. He further stated that his pain level at that time was 10/10. At North Oaks, Dr. Dewey Blackwell examined Mr. Prine and noted that he had “[m]o derate discomfort to palpation of the paralumbar and left SI area.” Dr. Blackwell further recorded his impressions as “[l]ow back pain ... Lumbar strain 2. Herniated I «nucleus pulposus-doubt[.]”
The defendants contend that other events could have caused Mr. Prine’s injuries. For example, they argue that Mr. Prine was involved in a car accident at *740 some point after this work accident and that it is not clear that his injuries were a result of the work accident. Furthermore, they point to certain inconsistencies in Mr. Prine’s testimony in general and suggest that Mr. Prine’s testimony is not credible. However, the record is clear that Mr. Prine was injured in an accident that occurred while he was in. the course and scope of his employment with Coastal. He reported the injury and the accident to his foreman immediately upon their occurrence, and he was treated by medical professionals within several hours after the accident. That treatment supported Mr. Prine’s claim that he had been injured while on the job. This assignment of error is without merit.
The defendants further argue that the WO erred in finding in favor of Mr. Prine despite the fact that he refused to submit to a drug test in contravention of both state law and Coastal’s written and promulgated drug and alcohol policy. As noted previously, Coastal’s drug and alcohol policy provides that testing for drugs and/or alcohol may be required of any employee involved in a work-related accident. If the employee refuses to cooperate with the administration of the policy by not consenting to or permitting drug testing when required, the employee may be subject to immediate termination.
In addition, LSA-R.S. 2S:1081(1)(b) provides that no compensation shall be allowed for an injury caused by the injured employee’s intoxication at the time of the injury. In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee due to the employee’s intoxication, the burden of proof shall be upon the employer. See LSA-R.S. 23:1081(2). For purposes of meeting this burden of proof, the employer has the right to administer drug and alcohol testing or demand that the employee submit himself to drug and alcohol testing immediately after the alleged job accident. LSA-R.S. 23:1081(7)(a). If the employee refuses to submit himself to drug and alcohol testing 1 ^immediately after the alleged job accident, then it shall be presumed that the employee was intoxicated at the time of the accident. LSA-R.S. 23:1081(7)(b). Notwithstanding any language to the contrary, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the intoxication. LSA-R.S. 23:1081(12). The burden of proof then is placed upon the employee to prove that the intoxication was not a contributing cause of the accident in order to defeat the intoxication defense of the employer. Id.
Thus, according to the statute, the employer bears the burden of proving that the employee was intoxicated. The employer can meet this burden by proving the employee’s actual intoxication through the use of drug and alcohol testing after the accident, or by availing itself of the presumption provided by LSA-R.S. 23:1081(7)(b), which provides that an employee is presumed to have been intoxicat- _ ed at the time of the accident if he refuses to submit himself to drug and alcohol testing immediately after the accident. Once the employer has proven that the employee was intoxicated, either through actual proof or through use of the presumption, a second presumption arises that the intoxication caused the accident. See LSA-R.S. 23:1081(12). At that point, the burden of proof shifts to the employee to prove by a preponderance of the evidence that the intoxication was not a contributing cause of the accident. Id.; see also, The Shaw Group v. Kulick, 04-0697 (La.App. 1st Cir.4/8/05), 915 So.2d 796, 800-01, writ denied, 05-1205 (La.11/28/05), 916 So.2d 148.
*741 In this matter, Mr. Aranyosi drove Mr. Prine to the clinic for drug and alcohol testing after the accident. It is undisputed that Mr. Prine failed to submit to drug or alcohol testing as required; therefore, Coastal was entitled to the presumptions that Mr. Prine was intoxicated and that his intoxication caused the accident.
Nevertheless, Mr. Prine was entitled to attempt to rebut the presumptions concerning his intoxication. Although it is undisputed that Mr. Prine did not submit to drug or alcohol testing at the clinic, Mr. Prine testified that he never refused to undergo the testing; rather, he stated that he told the nurse at the clinic that he simply wanted to see a doctor. According to Mr. Prine, the nurse told him that he had to provide a | inurine sample before he could see a doctor; however, Mr. Prine again insisted on seeing a doctor. It was this insistence on seeing a doctor that Mr. Prine claims was viewed by the nurse as a refusal to submit to the drug test.[8]
As noted previously, according to Ms. Dellafiora’s e-mail, Mr. Prine had been taken to the clinic only for drug and alcohol testing. There was no mention in the e-mail that Coastal intended to provide medical treatment for Mr. Prine at the clinic. In fact, a review of Mr. Prine’s chart at the clinic indicates that there are no triage notes from the date of the accident. Page ten of Mr. Prine’s record from that day is a clinic worksheet, which provides a place for the medical personnel to record the height, weight, blood pressure, pulse, respiration, and symptoms of the patient; however, this page is completely blank, indicating that Coastal and the clinic made no effort to provide Mr. Prine with any medical care whatsoever.
After Mr. Prine’s employment had been terminated by Coastal through Mr. Ara-nyosi, he attempted to drive home. Due to increased pain, he called his parents, and his mother drove him straight to North Oaks in Hammond so that he could obtain medical treatment. When he received medical treatment at North Oaks, Mr. Prine also submitted to a drug screen a few hours after the accident, which came back negative.
The defendants suggest that it is suspicious that Mr. Prine would refuse to undergo a drug test at the clinic in the morning and then obtain his own drug test in the afternoon, especially in light of his alleged interest in finding a Ra Shop earlier in the day. They further contend that the intent of LSA-R.S. 23:1081 is to allow the employer to test an employee for drugs and alcohol immediately after an accident at a facility it has chosen, rather than to allow the employee to have a drug test performed at a time and facility of his own choosing. The defendants specifically claim that the statute seeks to allow the employer to monitor the testing to “prevent substitution or interference with the collection or testing of reliable samples.” See LSA-R.S. 23:1081(9)(b).
| nWhile the concern about the testing of reliable samples is certainly valid, there is nothing in the record to suggest that Mr. Prine’s sample was not reliable or that he substituted or otherwise interfered with the collection of his sample. The defendants offered the testimony of Mr. Aranyo-si to suggest that Mr. Prine had attempted *742 to go to a Ra Shop on the way to the clinic to obtain a substance to clean out his system and prevent his drug screen from testing positive for marijuana. However, the defendants failed to offer any evidence that any such substance was available at a Ra Shop. Furthermore, Mr. Aranyosi failed to note this alleged statement by Mr. Prine on any of the accident reports he filled out that day, either on the form filled out for Coastal or the one given to the clinic. In addition, although Mr. Ara-nyosi testified that he might have told Ms. Dellafiora of Mr. Prine’s statement, she does not mention it in her e-mail. Finally, there is no mention of this comment in the file notes of Kathline Malone, the insurance adjuster for the defendants.
The record indicates that the accident occurred at approximately 9:30 or 10:00 in the morning. There is no evidence that Mr. Prine had consumed any alcohol or used any drugs of any kind that morning. Mr. Aranyosi was Mr. Prine’s roommate in the motel, and he testified that, in the two weeks they had been working and living together, he had never witnessed Mr. Prine smoke marijuana. He further testified that he did not notice anything about Mr. Prine’s demeanor that would indicate that he was high or intoxicated on alcohol on the date of the accident. In addition, Mr. Prine and his mother testified that they never stopped anywhere on the way to North Oaks, where Mr. Prine submitted to the drug screen. Finally, although the drug test was not performed at the clinic selected by Coastal, it was performed at a hospital. Mr. Prine testified that a nurse at North Oaks pushed him into the bathroom in a wheelchair. The nurse then helped him out of the chair, helped him to balance himself, and turned her head slightly while he provided the urine sample that was required. In response to questioning from the defendants’ counsel, Mr. Prine denied that anyone had provided him with a specimen to put in the cup, and he denied having ever heard of synthetic urine.
|, 2After the trial in this matter, the WO determined that Mr. Prine had properly rebutted the presumptions concerning his intoxication. We find no manifest error or legal error in this conclusion by the WO. The record is devoid of any evidence to suggest that Mr. Prine was intoxicated, much less that any intoxication was involved in the accident.
In their final assignment of error, the defendants argue that the WCJ erred in finding that Mr. Prine did not commit fraud. Louisiana Revised Statute 23:1208(A) provides:
It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
An employee violating LSA-R.S. 23:1208 shall forfeit any right to workers’ compensation benefits. LSA-R.S. 23:1208(E). The three requirements for forfeiture of the right to benefits under Section 1208 are: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Fontenot v. State ex rel. Department of Health and Hospitals, 12-1265 (La.App. 1st Cir.4/2/13), 116 So.3d 695, 697-98. Forfeiture of workers’ compensation is a harsh remedy, and statutory forfeiture must be strictly construed. An employer has the burden of proving each element within the statute, and the lack of any one of the elements is fatal to an employer’s avoidance of liability. Id., 116 So.3d at 698.
*743 The defendants contend that Mr. Prine made a false statement with regard to his claims that he had not performed any work since his accident. Specifically, the defendants point to the following excerpts from Mr. Prine’s deposition,[9] in which he is being questioned by the defendants’ attorney:
Q. Have you had any jobs since the date of the accident?
A. No, sir.
[[Image here]]
Q. Have you worked for anybody?
| 1SA. No, sir.
[[Image here]]
Q. Do you work on cars?
A. Yes, sir.
Q. What do you do on cars?
A. Minor tune-ups, stuff like that.
Q. Can you do that on new cars?
A. Pull the spark plugs.
Q. Have you done that to any of your cars since the accident?
A. No, sir. I have not even washed the damn van.
Q. So you have hot worked on any neighbors!’] cars or anybody’s car?
No, sir.
[[Image here]]
Q. Have you applied for any jobs?
A. No, sir.
At the trial of the matter, the defendants introduced Mr. Prine’s deposition and a surveillance video dated August 8, 2012. The surveillance video shows Mr. Prine performing a tune up on a vehicle at an auto repair shop owned by Melvin Battles, a friend of Mr. Prine’s. When confronted with the inconsistencies between his testimony and the video, Mr. Prine testified that he had thought, when questioned about whether he had worked since the accident, that he was being questioned about carpentry jobs, which he had not performed since the accident. In addition, he testified that he had simply misunderstood the question about whether he had worked on “anybody’s” cars since the accident, particularly since the initial part of the question was about whether he had worked on any neighbors’ cars.
The WCJ found that Mr. Prine had not violated LSA-R.S. 28:1208 by willfully making a false statement or representation for the purpose of obtaining workers’ compensation benefits. The WG specifically noted that Mr. Prine’s lack of education 114was a factor in the way he responded to many questions throughout the course of his claim. Most importantly, the court stated in its written reasons that it had not perceived that Mr. Prine was clearly trying to lie to obtain benefits; rather, the court concluded that Mr. Prine lacked the ability to clearly understand what it was all about. Clearly, the WO assessed Mr. Prine’s credibility in making these determinations. Accordingly, the factual findings of the WG on this issue are entitled to great deference. See Rosell, 549 So.2d at 844. This assignment of error is without merit.

Plaintiff’s Appeal

In his first assignment of error, Mr. Prine challenges the WCJ’s determination that an employer is not obligated to pay workers’ compensation benefits to an employee terminated for refusal to take a drug test after an accident. After the court found that Mr. Prine had carried his burden of proof and rebutted the presumption of intoxication imposed by his failure to submit to a drug screen after the accident, it then continued to discuss the impact of Mr. Prine’s failure to submit to the *744 drug screen. Specifically, in the court’s written reasons for judgment, it stated:
Then the issue arises, is the defendant still obligated to pay this claimant worker’s compensation since he was terminated for his refusal to submit to an employer drug test upon request of the employer post-accident? The refusal to take [the] drug test was not a part of the accident itself. It was, obviously, after the fact. Claimant did not carry his burden of proof that he was in too severe pain to give a urine sample. He requested and was given a drug test when he reached North Oaks Medical Center Emergency Room in Hammond. He paid for that himself. He had already been fired for the refusal to take a drug test.
So, again, is the defendant obligated to pay workers’ compensation benefits to an employee terminated for refusal to take a drug test post accident? Yes and no. Defendant is obligated to pay medical expensesf,] but he is not obligated to pay workers’ compensation indemnity benefits.
Mr. Prine contends that the WG improperly imposed negative consequences to his failure to submit to the drug test over and above those allowed by law. Pursuant to LSA-R.S. 23:1081(7)(b), if an employee refuses to submit himself to drug and alcohol testing immediately after the job accident, it shall be presumed that he was intoxicated at the time of the accident. In addition, once the employer has met the burden of proving intoxication at the time of the accident, it shall be presumed that the accident was caused by the employee’s intoxication, and the employee will bear the burden of 11fiproving that the intoxication was not a contributing cause of the accident. See LSA-R.S. 23:1081(12). Finally, if a health care provider delivers emergency care to an injured worker later presumed or found to be intoxicated, the employer shall be responsible for the reasonable medical care provided the worker until such time as he is stabilized and ready for discharge from the acute care facility. At that point, the employer’s responsibility for medical and compensation benefits shall end. See LSA-R.S. 23:1081(13). No other negative consequences are provided by law for an employee’s failure to submit to a drug screen immediately post accident.
While Mr. Prine was certainly subject to a rebuttable presumption of intoxication and a potential loss of his workers’ compensation benefits, Mr. Prine did, in fact, rebut the presumption of intoxication imposed by LSA-R.S. 23:1081(7)(b). Accordingly, the WG improperly concluded that he was subject to a forfeiture of his workers’ compensation benefits based solely on his refusal to submit to the drug screen and Coastal’s subsequent decision to terminate him.
In his second assignment of error, Mr. Prine contends that the WG improperly denied him TTDs. Total disability, whether permanent or temporary, means the inability to engage in any gainful occupation, whether or not the same or one similar to that in which the employee was customarily engaged when injured. LSA-R.S. 23:1221(1)(a) and (2)(a); Joseph v. J.E. Merit Constructors, Inc., 01-1666 (La.App. 1st Cir.6/21/02), 822 So.2d 72, 77, writ denied, 02-2295 (La.4/4/03), 840 So.2d 1201; Johnson v. Aetna Cas. & Sur. Co., 422 So.2d 1187, 1189 (La.App. 1st Cir.1982), writ denied, 429 So.2d 127 (La.1983). When the employee is not engaged in any employment or self-employment, in order to be entitled to TTDs, the employee must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or *745 self-employment, including employment while working in any pain. See LSA-R.S. 23:1221(1)(c); Atwood v. Ewing Timber, Inc., 34,045 (La.App. 2nd Cir.12/15/00), 774 So.2d 1140, 1144, writ denied, 01-0543 (La.5/11/01), 792 So.2d 733.
Clear and convincing proof has been defined as an intermediate standard falling 11fisomewhere between the ordinary “preponderance of the evidence” civil standard and the “beyond reasonable doubt” criminal standard. Clear and convincing proof requires objective medical evidence of the disabling condition causing the employee’s inability to engage in any employment. The claimant must provide objective, expert testimony as to his medical condition, symptoms, pain, and treatment, in addition to personal testimony, in order to meet this standard. The factual finding of whether a claimant is entitled to TTDs is subject to the manifest error or clearly wrong standard of appellate review. Roussell v. St. Tammany Parish School Bd., 04-2622 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 457-58, writ not considered, 06-362 (La.1/8/07), 948 So.2d 116.
In addition to his own testimony that he was incapable of working, Mr. Prine offered his medical records to support his claim for TTDs. As noted previously, Mr. Prine went to North Oaks on the day of the accident and was examined by Dr. Blackwell, who indicated that Mr. Prine had low back pain and a possible lumbar strain. Dr. Blackwell prescribed medication, advised Mr. Prine that he should not perform any heavy lifting, and recommended that he consult an orthopedist.
On May 16, 2012, Mr. Prine underwent an MRI at Ochsner Medical Center in Baton Rouge ordered by a neurologist, Dr. Benedict Idowu. The results of the MRI indicated as follows, in pertinent part:
L5-S1 level demonstrates desiccation narrowing with left central disc herniation. There is contact on left SI nerve root. Minor facet hypertrophy. Fora-minal L5 nerve roots exit without contact or distortion.
STIR sequences unremarkable.
Impression[:] Central left-sided disc herniation L5-S1.
On the same date, Dr. Idowu also administered a nerve conduction study to Mr. Prine. According to Dr. Idowu, that test demonstrated that Mr. Prine was experiencing bilateral tibial nerve neuropathy and left peroneal nerve neuropathy. However, Dr. Idowu noted that there was no evidence of SI radiculopathy.
Finally, Mr. Prine introduced the report of Dr. Charles Genovese, his current treating physician. Dr. Genovese’s impression was that Mr. Prine had a lumber disc 117rupture at L5-S1, with SI nerve root Impingement and also spondylolisthesis at L3-L4. Dr. Genovese further stated that Mr. Prine may also have a significant T7 disc rupture as well. According to Dr. Genovese:
He has a debilitating injury with severe pain and extremely limited activity and is barely able to do activities of daily living. He is never out of pain and requires a number of different medications just to decrease it. He is totally disabled from any occupation at this time[,] and this is likely permanent unless a lumbar fusion can stabilize his L-spine and decrease his pain.
The defendants did not offer any contrary medical evidence. However, the defendants introduced the surveillance video of Mr. Prine performing a tune up on an automobile at Mr. Battles’s auto repair shop. According to the defendants, the video shows Mr. Prine leaning over the vehicle to remove and replace spark plugs, and bending, stooping, and pulling, as he performed various tasks on the vehicle.
*746 The defendants contend that this video demonstrates that Mr. Prine completed all of these tasks without pain or limitation. However, that is not clear from the video. The video does not provide an unobstructed view of Mr. Prine while he is working on the vehicle. Although the defendants suggest that Mr. Prine is simply leaning over the vehicle to complete his tasks, Mr. Prine testified that he was leaning on the vehicle or up against the vehicle to help with the pain and to support the weight of his body. A review of the video supports Mr. Prine’s claims that he is leaning on the vehicle, rather than simply leaning over the vehicle without resting on it for support. Mr. Prine further testified that he had a lot of pain but that he has five children to feed, which required him to work through the pain. According to both Mr. Prine and Mr. Battles, that was the only time that Mr. Prine worked at the shop after the accident.
Mr. Prine testified that he worked at the auto repair shop on the date of the video, August 8, 2012, and that he was in pain while he performed his tasks on that date. He also acknowledged that he had been taking medication for pain, which had been prescribed by his doctor. He further testified that he could not have performed that job every day if it had been offered to him.
Shortly after this video was shot, Mr. Prine went to Dr. Genovese for the first time on September 4, 2012. At that visit, Mr. Prine related his complaints of lower and |i8mid-back pain to his job accident, which had occurred in February, and Dr. Genovese began giving him medication to deal with the pain. Dr. Genovese’s report, which is dated March 19, 2018, indicated that the pain medications helped but that the pain never truly went away. In addition, the report stated that Mr. Prine had noted that sitting caused increased leg numbness.[10] A physical exam performed by Dr. Genovese on March 15, 2018, was “remarkable for diffuse lower thoracic tenderness and limited ROM in all directions, moderately severe diffuse lumbar tenderness worse on the left, and increased back pain with a sitting straight leg raise bilaterally.” Based on his treatment of Mr. Prine, as well as the medical records provided by the other physicians, Dr. Ge-novese determined that Mr. Prine was totally disabled from any occupation seven months after Mr. Prine had attempted to work through the pain at Mr. Battles’s auto repair shop. Clearly, Mr. Prine has demonstrated by clear and convincing evidence that he is physically unable to engage in any employment, including employment while working in any pain.[11] See LSA-R.S. 23:1221(l)(c). Accordingly, the WCJ’s finding that Mr. Prine failed to bear his burden of proof that he was disabled is manifestly erroneous.
Mr. Prine was hired by Coastal from January 12, 2012, until February 28, 2012, the date of the accident, for a total of 6.5 weeks. At the trial on the matter, Mr. Prine introduced into evidence his IRS form 8879, which indicated that his adjusted gross income for 2012 was $5,925. Mr. Prine testified that the income on that form had only come from Coastal. Thus, his average weekly wage was $912. Sixty-six and two-thirds percent of his average weekly wage is $608. See LSA-R.S. 23:1221(l)(a). According to the evidence in the record, Mr. Prine has not reached his maximum medical improvement yet; *747 therefore, he is entitled to TTDs from February 28, 2012, the date of the accident, through the present, at the rate of $602 per week.[12]
Mr. Prine also appeals the WCJ’s denial of his claim that the defendants violated |1BLSA-R.S. 28:1208, when Mr. Aranyosi willfully made a false statement for the purpose of defeating Mr. Prine’s claim for workers’ compensation benefits. Mr. Prine’s claim is based on the affidavit submitted by Mr. Aranyosi, in which he claimed that Mr. Prine wanted to stop at a Ra Shop on the way to the clinic after the accident. Mr. Aranyosi signed the affidavit on June 14, 2012, in response to Mr. Prine’s motion for summary judgment on the issue of intoxication and stated, in pertinent part:
7. That on the way to the Occupational Medical Center, I was told by Mr. Prine that he wanted to be treated in Baton Rouge, Louisiana and that he first needed to find a “Ra Shop” to get some type of substance to clean out his system before he could take a drug test because he had smoked marijuana;
8. Mr. Prine also got on his cell phone and was inquiring about listings for RA shops;
At trial, Mr. Aranyosi testified that he might have mentioned this comment by Mr. Prine to Ms. Dellafiora, as well as to Randy Zayak, one of his supervisors at Coastal. However, neither Ms. Dellafiora nor Mr. Zayak testified at the trial to corroborate this statement. Furthermore, none of the defendants’ exhibits, which were introduced at trial, support or corroborate Mr. Aranyosi’s statement. The defendants simply rely on Mr. Aranyosi’s statement to support itself.
It is undisputed that Mr. Aranyosi did not make any notations regarding Mr. Prine’s alleged comment on the accident report. In his brief to this court, Mr. Prine notes that there are two versions of the accident report in the record: one version was given to the clinic as part of its record, and one version was turned in to Coastal. Both versions are essentially the same; however, the one that was turned in to Coastal has some additional notations not found on the one given to the clinic, which indicates that it is the final version of the report and that the report was changed after a copy of it was given to the clinic. Specifically, in the report given to the clinic, the lines concerning witnesses are blank; however, in the version given to Coastal, Mr. Aranyosi had noted that there were no witnesses to the accident.[13]
Although Mr. Aranyosi made these changes to the accident report after | ¡^submitting a copy to the clinic, he never changed the report to reflect the “Ra Shop” comment allegedly made by Mr. Prine on the way to the clinic. The report also provided a spot for Mr. Aranyosi to list any unsafe acts by the employee or others that had contributed to the accident. However, despite supposedly having a statement from the injured employee confessing about his marijuana use, Mr. Aranyosi did not note this on the report. It seems incredible- that Mr. Aranyosi would have thought to amend the report to reflect information he had obtained about witnesses to the accident but never thought to amend the report to include a statement allegedly made by Mr. Prine, in which he admitted to using marijuana, par *748 ticularly considering Mr. Prine’s failure to submit to the drug screen at the clinic.
In addition, Ms. Dellafiora did not note Mr. Prine’s alleged marijuana use, even though she supposedly had been notified of it, when she prepared the initial report of injury on March 1, 2012.[14] Finally, Ms. Malone, the adjuster, also made several notations about the claim, including certain comments allegedly made by Mr. Prine.[15] However, again, there was no mention of the “Ra Shop” comment.
After the trial on this matter, the WG rendered a judgment in which it determined that Mr. Aranyosi did not violate LSA-R.S. 23:1208. However, in the written reasons for judgment, the court noted that there was no testimony by Mr. Ara-nyosi that Mr. Prine showed any signs of impairment while on the job, while on the drive to the clinic,- or while they were driving back from the clinic to the motel. The court also noted that Mr. Prine had, in fact, tested negative for drugs a few hours after the accident. In addition, Mr. Ara-nyosi had further testified that he had been living with Mr. Prine for approximately two weeks while they had been working on their current job and he had never witnessed Mr. Prine smoke marijuana during that time.
Since the WCJ’s findings with regard to a violation of LSA-R.S. 28:1208 are factual in nature, they will not be reversed on appeal absent a showing of manifest | ¾1 error. See Chesne v. Elevated Tank Applicators, Inc., 04-46 (La.App. 3rd Cir.5/12/04), 874 So.2d 333, 338, writ denied, 04-1439 (La.9/24/04), 882 So.2d 1141. However, after a review of the record, we find that there is absolutely no evidence in the record to support Mr. Aranyosi’s claim regarding Mr. Prine’s alleged “Ra Shop” comment. Indeed, all the evidence in the record undermines Mr. Aranyosi’s claim.[16] Therefore, we find that Mr. Aranyosi’s statement regarding Mr. Prine’s alleged marijuana use was willfully made for the express purpose of defeating Mr. Prine’s claim for benefits. Accordingly, we find that the WG erred in denying Mr. Prine’s claim under Section 1208, and we order the defendants to pay $3,000 each in penalties to the Kids Chance Scholarship Fund. See LSA-R.S. 23:1208(D).
In his final assignment of error, Mr. Prine contends that the WO erred in failing to award him penalties and attorney fees for the defendants’ failure to pay for his medical treatment. An employer has a statutory duty to furnish all necessary medical treatment caused by a work-related injury. LSA-R.S. 23:1203(A). Dangerfield v. Hunt Forest Products, Inc., 10-1324 (La.App. 1st Cir.3/25/11), 63 So.3d 214, 218, writ denied, 11-0814 (La.6/3/11), 63 So.3d 1019. The right to medical expenses is separate and distinct from the right to disability benefits. Walker v. High Tech Refractory Services, Inc., 03-1621 (La.App. 1st Cir.06/25/04), 885 So.2d 1185, 1188. It is undisputed that the defendants have failed to pay any medical benefits for Mr. Prine since his accident.
*749 Louisiana Revised Statute 23:1201 addresses the time and place of payment of benefits, as well as the penalties assessed for failure to pay timely, and provides, in pertinent part:
E. (1) Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof, if the provider of medical services is not utilizing the electronic billing rules and regulations provided for in R.S. 23:1203.2.
(2) For those providers of medical services who utilize the electronic billing rules and regulations provided for in R.S. 23:1203.2, medical benefits 122payable under this Chapter shall be paid within thirty days after the employer or insurer receives a complete electronic medical bill, as defined by rules promulgated by the Louisiana Workforce Commission.
F. [F]ailure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing.
Mr. Prine contends that Coastal had an affirmative, statutorily-mandated duty to render medical treatment immediately after the accident. We agree, and we note that Coastal’s actions after the accident are difficult to rationalize, considering that they provided no medical treatment whatsoever to Mr. Prine and made no effort to determine the status of his health after he was injured in an accident on one of their job sites.
In declining to award penalties and attorney fees, the WCJ determined that the defendants had reasonably controverted Mr. Prine’s claim and that, in fact, no benefits had been awarded. Medical benefits were awarded, however. Furthermore, we note that the test to determine whether the claimant’s right to benefits has been reasonably controverted is set forth in Chailland Business Consultants v. Duplantis, 03-2508 (La.App. 1st Cir.10/29/04), 897 So.2d 117, 126, writ denied, 04-2922 (La.2/4/05), 893 So.2d 878, quoting Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La.App. 1st Cir.), writ denied, 567 So.2d 614 (La.1990):
Given the facts, medical and otherwise, known to the employer or his insurer, did the employer or his insurer have a reasonable basis to believe that medical expense and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.
In the case before this court, the defendants offered no medical evidence whatsoever to challenge Mr. Prine’s claim to medical benefits or to contradict the | ^medical evidence in support of his claim. Essentially, the defendants relied on Mr. Prine’s failure to submit to the drug test at the *750 clinic, and the resulting presumption of intoxication, in order to deny his claim for medical benefits. However, they had to know this presumption would likely be rebutted when they got a claim from Mr. Prine a few days later, because he had submitted to a drug screen at North Oaks, which had returned negative for drugs. The defendants did not request any independent medical examination of Mr. Prine, nor did they otherwise challenge the medical evidence in the record. Thus, we find that the defendants did not have sufficient factual and medical information to reasonably believe that medical expenses were not due, and we find that the WCJ erred in not awarding penalties and attorney fees.
At trial, Mr. Prine introduced into evidence a statement of the attorney fees and costs he had incurred. The statement shows 62.35 hours of attorney time, plus $53.09 in expenses, through the date of trial. In his brief to this court, Mr. Prine’s attorney further states that he spent 16 hours preparing the post-trial memorandum, for a total of 78.35 hours of attorney time. Accordingly, we award Mr. Prine and his attorney a total of $13,711.25 in attorney fees,[17] plus $53.09 in expenses. We further order the defendants to pay the maximum statutory penalty authorized by LSA-R.S. 23:1201(F) in the amount of $8,000.
DECREE
For the foregoing reasons, we reverse that part of the judgment that found that the defendants had not violated LSA-R.S. 23:1208, and we render judgment ordering the defendants to pay a civil penalty in the amount of $3000 each to the Kids Chance Scholarship Fund in accordance with LSA-R.S. 23:1208(D). We further reverse the judgment of the workers’ compensation judge to the extent that it found that the plaintiff, Joshua M. Prine, was not entitled to receive temporary total disability benefits as a result of the work-related accident he was involved in on February 28, 2012, while in the course and scope of his employment for defendant, Coastal Bridge Company, L.L.C. We further order Coastal and the Gray Insurance Company to pay temporary | ¡.¿total disability payments to Mr. Prine in the amount of $602 per week effective February 28, 2012, through the present. Finally, we reverse that part of the judgment that found that the defendants had reasonably controverted the plaintiffs claim for medical benefits and were, therefore, not required to pay penalties and attorney fees pursuant to LSA-R.S. 23:1201(F). We award attorney fees in the amount of $13,711.25, as well as costs in the amount of $53.09. In addition, we order the defendants to pay a statutory penalty in the amount of $8,000 in accordance with LSA-R.S. 23:1201(F). In all other respects, the judgment is affirmed. All costs of this appeal are assessed to the defendants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED IN PART.

. According to Coastal’s employee handbook, testing for drugs and/or alcohol may be required of any employee involved in a work-related accident. Furthermore, any employee who is found to be in violation of the substance abuse policy or who refuses to cooperate with the administration of the policy, by not consenting to or permitting drug testing when required, may be subject to immediate termination.

. Mr. Prine testified that he never refused to submit to the drug test; rather, he stated that he simply wanted to see a doctor.

. According to Mr. Prine, he lay down in his mother’s van on the way to the hospital, and his father drove his truck back to the house.

. Mr. Prine amended his claim twice. The first time, he added Coastal's workers’ compensation insurer, Gray Insurance Company, as a defendant, and the second time, Mr. Aranyosi was added as a defendant.

. The WO also denied Mr. Prine’s claim for SEBs.

. The defendants have filed a suspensive appeal, and Mr. Prine has filed a devolutive appeal.

. Mr. Prine had testified earlier that his task that day had been to wreck forms using a maul and that the project he was working on for Coastal was to build a span bridge.

. According to the notation on the medical records, Mr. Prine allegedly agreed to submit to a breath alcohol test but refused to submit to a drug screen. Mr. Prine denied that anyone ever mentioned anything about a breath alcohol test, and he further denied that he had refused the drug screen. As mentioned previously, he simply stated that he wanted to see a doctor. In any event, no breath alcohol test was ever performed, and the nurse from the clinic did not testify at the trial.

. The deposition is dated October 19, 2012.

. Dr. Genovese points out in his report that Mr. Prine had attempted to obtain physical therapy, but due to a problem with Medicaid, he was unable to receive those services.

. The fact that Mr. Prine worked in pain for one day, seven months before his doctor's determination that he was totally disabled, does not bar him from receipt of TTDs.

. Because Mr. Prine is entitled to TTDs, we do not address his claim for SEBs.

. Other changes were made by Ms. Della-fiora concerning the circumstances of the accident.

. A portion of that report asks what caused the injury to happen and specifically asks what substances were involved. Ms. Della-fiora simply wrote, "wrecking forms,” but made no mention of the "Ra Shop" comment.

. In Ms. Malone's file is a comment by Mr. Prine, in which he allegedly said, after being fired, that he guessed the incident would not be good for his workers’ compensation claim.

.Furthermore, we note that the court did not make a specific finding that Mr. Aranyosi was credible or that it did not perceive that he was clearly trying to lie to defeat Mr. Prine's claim to benefits, as it had when ruling on the defendants’ reciprocal claim under Section 1208.

. This award is based on 78.35 hours of attorney time at $175 per hour.